424 P.2d 136

**Don E. DILWORTH, Plaintiff and Appellant,**

v.

**Vaughn K. LAURITZEN, doing business as Salt Lake Solaray Company, Defendant and Respondent.**

**No. 10672.**

Supreme Court of Utah.

Feb. 24, 1967.

---

Backman, Backman & Clark, Ralph J. Marsh, Salt Lake City, for appellant.

Davis & Bayles, Merrill K. Davis, Salt Lake City, for respondent.

ELLETT, Justice:

The plaintiff and the defendant signed a contract whereby plaintiff was given the right as a distributor of Solaray products in Salt Lake City, Utah, and as such *distributor* he would have the right to appoint *dealers* within his territory. So long as plaintiff lived up to the terms of the contract, the defendant agreed not to appoint another competing *distributor*.

The plaintiff would be permitted to sell a certain geographical part of Salt Lake City to a dealer for a price to be agreed upon, and thereafter the dealer could sell the products in his territory but would be compelled to buy through the plaintiff, who would take a profit on all sales.

Nowhere in the contract is the term "exclusive" used, and the relationship between the parties is stated to be that of "buyer and seller." However, it seems

that the right to sell products and appoint dealers in the territory conveyed was an exclusive right so long as plaintiff was not in default under the terms of the contract. The following language is found in the contract:

So long as Distributor shall not be in default under the terms of this Agreement, Solaray agrees not to establish distributors or sub-distributors within assigned Territory. Distributor may grant to other persons and corporations the right to sell and distribute Products within the Territory, subject to the following terms and provisions:

Distributor is given the right and privilege to set up Dealers in the Territory. * * *

Plaintiff paid $4,720 of an agreed price of $5,000 to the defendant, the remaining $280 not being paid at the time because the full kit of materials and equipment was not initially delivered to him.

Prior to the signing of the contract the defendant had already set up three dealers whose territory was in but not limited to Salt Lake City. The plaintiff claims fraud on the part of the defendant in not telling about the three dealers already appointed prior to the time of the signing of the contract.

The plaintiff admits he learned about the three dealerships within a month after signing the contract, and in fact he testified that he had visited one of the dealers before the contract was signed and saw his setup but thought the dealer was simply a satisfied customer.

Although plaintiff knew of the three dealers within a month of the signing of the contract, he nevertheless continued to operate the business for two more months before he gave it up and moved to California.

In this action he did not pray for the return of his money, but instead he claimed actual damages in the sum of $8,985 and punitive damages in the sum of $10,000.

The defendant's agent who arranged the contract between the parties testified that he told the plaintiff about the three dealers. The defendant himself testified that he told plaintiff about the three dealers before he received any money from him and explained that plaintiff would get an "override" on their sales.

■ The evidence was in conflict, and the trial judge as arbiter of the disputed testimony was within his rights in believing either one of the parties who testified before him. (See Seeley v. Houston, 105 Utah 202 and 205, 141 P.2d 880; Ogden Livestock Shows v. Rice, 108 Utah 228 at page 230, 159 P.2d 130.)

In support of his claim for damages, the plaintiff testified to the following items:

| | |
|---|---|
| Paid defendant for distributorship | $ 4,720.00 |
| Loan from bank | 1,160.00 |
| Interest thereon | 125.00 |
| Expected profit of two salesmen making three sales each per week | 264.00 weekly |
| Loss on sale of home because he moved to California | 1,200.00 |
| Loss on sale of car for the same reason | 800.00 |
| Value of his time for three months at $500 per month | 1,500.00 |
| Salary paid wife as secretary | 500.00 |
| Office rent | 300.00 |
| Office equipment purchased | 455.17 |
| License fee | 50.00 |
| Tax paid to State of Utah | 10.00 |
| Sign for building | 179.50 |

———◆———

■ Plaintiff perhaps thought he should recover under the so-called "Federal rule," that is, the value of what he has paid out less the value of what he received. This is also known as the "out-of-pocket loss rule." However, Utah follows the majority rule, which is the difference between the actual value of what he received and the value thereof if it had been as represented. (See Hecht v. Metzler, 14 Utah 408, 48 P. 37; Pace v. Parish, 122 Utah 141, 247 P.2d 273.)

It is rather difficult to see how any of these claimed items would be related to the fact that there were three dealers already in existence when the contract was signed. These same expenses would have been incurred with or without the dealers.

■ We think the trial court was justified in finding that plaintiff was not induced by fraud to enter into the contract; and while we do not agree with His Honor that the contract was not exclusive, we do think that he was justified in ruling for the defendant on the further ground that no competent evidence was given regarding the damages which might have been sustained even if there had been fraud.

This is so because one of the essential elements of fraud and deceit is that the plaintiff sustain damages. See Pace v. Parish, et al., supra, and citations therein set out. See also Prosser on Torts, 3rd Ed., Sec. 105, p. 747, wherein it is stated:

> Since the modern action of deceit is a descendant of the older action on the case, it carries over the requirement that the plaintiff must have suffered substantial damage before the cause of action can arise. Nominal damages are not awarded in deceit, * * *

It, therefore, follows that the judgment of the trial court should be and it is hereby affirmed. Costs to defendant.

CROCKETT, C. J., and CALLISTER and TUCKETT, JJ., concur.

HENRIOD, Justice (concurring):

I concur on the ground that the trial court was justified in finding that plaintiff was not induced by fraud to enter into the contract under the facts of this case. Period.

Having so decided, the detailed recitation of claim for damages and the rules pertaining thereto are surplusage. The question of damages is of no import if there be no cause of action. Neither is the rule as to damages, which, if correctly asserted by the majority, has already been laid down and needs no needless repetition here.