**Jackie TURNER, Plaintiff, Appellee, and Cross–Appellant,**

v.

**GENERAL ADJUSTMENT BUREAU, INC.; Oak Norton; and Inteldex Corporation, d/b/a Inteltech Services, Defendants, Appellants, and Cross–Appellees.**

Case No. 910587–CA.

Court of Appeals of Utah.

April 22, 1992.

Certiorari Denied Oct. 1, 1992.

Craig L. Barlow, Salt Lake City, for General Adjustment Bureau, Inc.

Robert L. Stevens and Michael L. Schwab, Salt Lake City, for Oak Norton and Inteldex Corp.

Gordon K. Jensen, West Valley City, and Glen A. Cook, Salt Lake City, for Jackie Turner.

Before GARFF, GREENWOOD and RUSSON, JJ.

## OPINION

GARFF, Judge:

Defendants, General Adjustment Bureau, Inc. (GAB), Inteldex Corporation, d/b/a Inteltech Services (Inteltech), and Oak Norton (Norton) appeal the trial court's judgment notwithstanding the verdict (j.n.o.v.) in favor of plaintiff, Jackie Turner (Turner), and the punitive damages award. Turner cross appeals, asserting that the trial court erred (1) by refusing to instruct the jury that emotional distress damages are recoverable in a cause of action for fraud, (2) by admitting evidence concerning Turner's past drug use and psychological history, and (3) by refusing, after granting j.n.o.v., to submit the issue of damages to the jury. We reverse.

## FACTS

On November 30, 1984, Turner's husband filed a workers' compensation claim asserting that he was injured in a work-related accident. His employer's workers' compensation insurance carrier, Occidental Fire and Casualty Insurance Company, retained GAB to adjust the claim. GAB, in turn, hired Inteltech to investigate the claim.

Inteltech employees, masquerading as representatives of a product marketing research company, conducted an undercover investigation of the claim over a period of approximately three months. Utilizing the marketing company facade, they gained access to the Turner home to gather information about the activities of Turner's husband. Inteltech employees visited the Turners at their home and asked them to

test various consumer products on a continuing basis. In addition to testing products, an Inteltech employee invited Turner to participate in a shopping spree. However, on the day the shopping spree was scheduled to occur, Inteltech cancelled it. Turner claims that as a result of the invitation, she lost approximately twenty dollars because she had hired and paid a babysitter.

Turner further claims that as a result of her unwitting participation in the undercover investigation, she lost time she could have spent working. Turner's work consisted of tasks performed for her landlord on a by-the-job basis, for which she received rent credits.

On July 20, 1987, at a hearing on the workers' compensation claim of Turner's husband, Inteltech employees appeared and testified about information gathered through the undercover investigation. It was then that Turner first became aware that Inteltech employees had represented themselves as market researchers for the purpose of investigating her husband's claim. After the hearing, the administrative law judge denied the workers' compensation claim.

Turner sued, claiming fraud, invasion of privacy, and conspiracy. She sought special, general, and punitive damages. The case was tried to a jury on March 12 through 14, 1990.

At the close of Turner's case, defendants moved for a directed verdict, which the court denied. Turner, in turn, moved for a directed verdict at the close of defendants' cases, which the court took under advisement. The issues of fraud, invasion of privacy, conspiracy, and Norton's personal liability were submitted to the jury. The jury rendered a verdict against Turner on both the fraud and invasion of privacy claims, and therefore, did not reach the conspiracy claim and damages issues. Thereafter, Turner moved for j.n.o.v. and for a new trial on all issues submitted to the jury.

After oral argument, the trial court granted j.n.o.v. and denied the motion for a new trial. The court ruled that "no reasonable minds could have differed on the evidence which was presented to [the jury].... And it was highly offensive to this Court for the defendants to do what they did to [Turner]." As to the claim of fraud, the court found that Turner proved damages in the amount of twenty dollars for the babysitter. The court, however, found that Turner's evidence concerning damages for lost work time was "too speculative."

The court entered judgment, jointly and severally, against GAB and Inteltech on the fraud, invasion of privacy, and conspiracy claims in the following amounts: $20.00 for out-of-pocket damages; $5,000.00 for general damages; $3,000.00 for punitive damages; post-judgment interest; and attorney fees. The trial court further found Norton to be personally liable for the entire amount of the judgment. Turner moved to amend the judgment to allow the damages issues to go to the jury. The court denied the motion.

## STANDARD OF REVIEW

A j.n.o.v. can be granted only when the losing party is entitled to judgment as a matter of law. *Hansen v. Stewart*, 761 P.2d 14, 17 (Utah 1988). In other words, j.n.o.v. "is only justified if, after looking at the evidence and all of its reasonable inferences in a light most favorable to the party moved against, the trial court concludes that there is no competent evidence which would support a verdict in his favor." *Gustaveson v. Gregg*, 655 P.2d 693, 695 (Utah 1982); *King v. Fereday*, 739 P.2d 618, 620 (Utah 1987). On appeal, we apply the same standard. *Gustaveson*, 655 P.2d at 695; *King*, 739 P.2d at 620. In determining whether competent evidence supports the verdict, we accept as true all testimony and reasonable inferences flowing therefrom that tend to prove defendants' case, and we disregard all conflicts and evidence that tend to disprove defendants' case. *Koer v. Mayfair Mkts.*, 19 Utah 2d 339, 431 P.2d 566, 568–69 (1967).

## FRAUD

Defendants contend that the trial court erred in granting j.n.o.v. because compe-

tent evidence supported the jury's verdict of no fraud in that Turner was not damaged as a result of the undercover investigation.

To establish fraud, a party must prove by clear and convincing evidence each of the following elements: (1) a representation was made; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to that party's injury and damage.[1] *Mikkelson v. Quail Valley Realty*, 641 P.2d 124, 126 (Utah 1982); *Pace v. Parrish*, 122 Utah 141, 144–45, 247 P.2d 273, 274–75 (1952).

The trial court in the instant case applied the wrong standard in granting j.n.o.v. Instead of determining whether competent evidence supported the verdict, *see, e.g.*, *King v. Fereday*, 739 P.2d 618, 620 (Utah 1987), the court found that no reasonable minds could have differed on the evidence presented.

Viewing the evidence in favor of defendants, we conclude that substantial competent evidence supported the jury's verdict of no cause of action for fraud. Turner's evidence that she sustained damage when she hired and paid a babysitter apparently was not, as viewed by the jury, clear and convincing. At trial, when asked how much she paid the babysitter, Turner vaguely and equivocally testified, "I think it was like twenty bucks or something like that.... It was reasonable." Furthermore, Turner did not identify the babysitter nor did she produce evidence of payment as claimed.

Finally, competent evidence supported the jury's implied finding that Turner did not sustain any lost work time damages. Consistent with the jury's finding, the court found this claim to be "too speculative" inasmuch as it was based solely on Turner's unsubstantiated assertions of lost work time. Because the jury had competent evidence to support its verdict that no fraud occurred,[2] the trial court erred in granting j.n.o.v. on the claim of fraud.[3]

---

1. GAB contends that Turner must prove substantial damage to recover under her claim of fraud. In support, GAB cites to *Dilworth v. Lauritzen*, 18 Utah 2d 386, 424 P.2d 136, 138 (1967), where the Utah Supreme Court, after stating that "one of the essential elements of fraud is that the plaintiff sustain damages," cites to *Pace v. Parrish*, 122 Utah 141, 144–45, 247 P.2d 273, 274–75 (1952), and section 105 of the third edition of *Prosser on Torts* (currently located at section 110 of the fifth edition of *Prosser and Keeton on the Law of Torts*). Although section 110 of *Prosser and Keeton on the Law of Torts* supports the proposition that substantial damage is required before a fraud or deceit cause of action can arise, *see* W. Page Keeton *et al., Prosser and Keeton on the Law of Torts*, § 110, at 765 & n. 1 (5th ed. 1984), GAB reads *Dilworth* too broadly. Utah law requires that a party sustain only *some* injury or damage. *See Mikkelson v. Quail Valley Realty*, 641 P.2d 124, 126 (Utah 1982); *Dugan v. Jones*, 615 P.2d 1239, 1246 (Utah 1980); *Taylor v. Gasor, Inc.*, 607 P.2d 293, 294 (Utah 1980); *Rummell v. Bailey*, 7 Utah 2d 137, 320 P.2d 653, 659 (1958); *Pace*, 247 P.2d at 274–75. Moreover, this court has interpreted *Pace* to require that a complaining party need only "establish *some* damage." *Conder v. A.L. Williams & Assocs.*, 739 P.2d 634, 640 (Utah App.1987).

2. The failure to prove any of the previously mentioned elements of fraud is fatal to a complaining party's case. Inasmuch as competent evidence supports the jury's implied finding of no damage, we need not address arguments concerning other elements of fraud.

3. Assuming, *arguendo*, Turner could prove some sort of damage under her fraud claim, as a complaining party, she still had a duty to mitigate damages. *Conder*, 739 P.2d at 639. A complaining party is not entitled to recover damages resulting from wrongful conduct which could have been avoided or minimized by reasonable means. *Angelos v. First Interstate Bank of Utah*, 671 P.2d 772, 777 (Utah 1983); *Conder*, 739 P.2d at 639.

Defendants' evidence demonstrates that Turner failed to mitigate the damages she claims to have sustained by having to hire and pay a babysitter. Turner testified that an Inteltech investigator called and cancelled the shopping spree the day it was scheduled. Other than the bald statement that the babysitter still had to be paid, Turner gave no explanation why she could not cancel the babysitter or otherwise minimize her damages.

## INVASION OF PRIVACY

Defendants claim that competent evidence supported the jury's verdict that there was no invasion of Turner's privacy. Invasion of privacy as a common law tort has developed into four distinct torts.[4] However, Turner's cause of action is based only on the tort of intrusion upon seclusion.

 To establish an invasion of privacy claim of intrusion upon seclusion,[5] a complaining party must prove by a preponderance of the evidence an intentional substantial intrusion, physically or otherwise, upon the solitude or seclusion of the complaining party that would be highly offensive to the reasonable person.[6] Restatement (Second) of Torts § 652B & cmt. d (1977); *accord* W. Page Keeton *et al.*, *Prosser and Keeton on the Law of Torts*, § 117, at 855 (5th ed. 1984). The language "highly offensive to the reasonable person" suggests a determination of fact for which a jury is uniquely qualified. *See Cruz v. Montoya*, 660 P.2d 723, 729 (Utah 1983). In determining issues of fact,[7] a jury necessarily accepts the testimony of certain witnesses and discounts conflicting testimony. *Fillmore Prods. v. Western States Paving*, 592 P.2d 581, 582 (Utah 1979). On appeal, we will not substitute our judgment for that of the jury unless no competent evidence supports the verdict. *Id.*

 After viewing the evidence and all reasonable inferences flowing therefrom in a light most favorable to defendants, *see Koer v. Mayfair Mkts.*, 19 Utah 2d 339, 431 P.2d 566, 568–69 (1967), we conclude that competent evidence supported the jury's verdict of no invasion of privacy. The record discloses first, that the purpose and scope of the undercover investigation was limited to gathering information concerning the workers' compensation claim.[8] Second, at no time did Inteltech representatives enter Turner's home without her permission. Third, the investigation visits were relatively short. Fourth, Turner's credibility was called into question by competent evidence. Based on the foregoing, the jury could reasonably conclude, as it apparently did, that Inteltech employees did not substantially intrude in a manner that would be highly offensive to a reasonable person. Therefore, the trial court erred by granting j.n.o.v. on the invasion of privacy claim.

## EMOTIONAL DISTRESS DAMAGES FOR FRAUD

 Turner cross appeals, claiming that the trial court erred by refusing to instruct the jury that emotional distress damages

---

4. In the classic article entitled *Privacy*, Prosser enumerated the four torts under the right to privacy as follows:
 1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs;
 2. Public disclosure of embarrassing private facts about the plaintiff;
 3. Publicity which places the plaintiff in a false light in the public eye; and
 4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness.
 William L. Prosser, *Privacy*, 48 Cal.L.Rev. 383, 389 (1960); *Cox v. Hatch*, 761 P.2d 556, 563 n. 7 (Utah 1988).

5. There is little case law to assist us in the determination we make today concerning Turner's invasion of privacy claim. The most probable reason for this is because
 > even today most individuals not acting in some clearly identified official capacity do not go into private homes without the consent of those living there; not only do widely held notions of decency preclude it, but most individuals understand that to do so is either a tort, a crime, or both.

*Miller v. National Broadcasting Co.*, 187 Cal. App.3d 1463, 232 Cal.Rptr. 668, 678–79 (Ct.App. 1986) (footnotes omitted).

6. Once a party establishes a cause of action for invasion of privacy, that party recovers for mental distress damages proved, if such damages are the kind that normally result from such an invasion. Restatement (Second) of Torts § 652H(b) (1977); *see also Fairfield v. American Photocopy Equip. Co.*, 138 Cal.App.2d 82, 291 P.2d 194, 198 (1955) ("The fact that damages resulting from an invasion of the right of privacy cannot be measured by a pecuniary standard is not a bar to recovery.").

7. The jury has broad prerogatives in determining issues of fact. *Evans v. Stuart*, 17 Utah 2d 308, 410 P.2d 999, 1002 (1966).

8. There is no evidence in the record and no claims were made at trial that Inteltech employees harassed or annoyed Turner in the course of the undercover investigation.

may be recovered in a fraud action. A challenge to a trial court's refusal to give a jury instruction presents questions of law. *Ramon By and Through Ramon v. Farr*, 770 P.2d 131, 133 (Utah 1989). Consequently, we do not defer to the trial court's rulings. *Id.* We affirm such a refusal when the proposed instruction does not properly and fairly state the law as applied to the facts of the case. *Id.* at 133–34.

■ Whether emotional distress damages are recoverable for fraud is a question of first impression under Utah law. Authorities are split on this issue. Illustrative of decisions not allowing recovery of emotional distress damages in a fraud action are *Cornell v. Wunschel*, 408 N.W.2d 369, 382 (Iowa 1987); *Carrigg v. Blue*, 283 S.C. 494, 323 S.E.2d 787, 789 n. 1 (1984); *Umphrey v. Sprinkel*, 106 Idaho 700, 682 P.2d 1247, 1258–59 (1983); *Ellis v. Crockett*, 51 Haw. 45, 86, 451 P.2d 814, 820 (1969); and *Harsche v. Czyz*, 157 Neb. 699, 61 N.W.2d 265, 272 (1953). In contrast, *Kilduff v. Adams, Inc.*, 219 Conn. 314, 593 A.2d 478, 484 (1991); *Trimble v. City of Denver*, 697 P.2d 716, 730 (Colo.1985); *Crowley v. Global Realty, Inc.*, 124 N.H. 814, 474 A.2d 1056, 1058 (1984); *McRae v. Bolstad*, 32 Wash.App. 173, 646 P.2d 771, 775–76 (1982), *aff'd*, 101 Wash.2d 161, 676 P.2d 496 (1984); and *Rosener v. Sears, Roebuck & Co.*, 110 Cal.App.3d 740, 168 Cal.Rptr. 237, 246 (1980), *appeal dismissed*, 450 U.S. 1051, 101 S.Ct. 1772, 68 L.Ed.2d 247 (1981) illustrate decisions allowing such recovery.

As indicated above, many jurisdictions follow the rule that emotional distress damages are not recoverable in a cause of action for fraud. *Cf. First Sec. Bank of Utah v. J.B.J. Feedyards, Inc.*, 653 P.2d 591, 598 (Utah 1982) (emotional distress damages "are an extreme remedy, which should be dispensed with caution"). This rule stems from the principle that fraud, as an economic tort, protects only pecuniary losses. *Walsh v. Ingersoll–Rand Co.*, 656 F.2d 367, 370 (8th Cir.1981). According to a leading treatise on remedies:

> [D]eceit is an economic, not a dignitary tort, and resembles, in the interests it

seeks to protect, a contract claim more than a tort claim. For this reason, though strong men may cry at the loss of money, separate recovery for mental anguish is usually denied in deceit cases, just as it is denied in contract cases, simply because emotional distress, though resulting naturally enough from many frauds, is not one of the interests the law ordinarily seeks to protect in deceit cases.

D. Dobbs, *Handbook on the Law of Remedies*, § 9.2 at 602 (1973) (footnotes omitted); *see also Pihakis v. Cottrell*, 286 Ala. 579, 243 So.2d 685, 692 (1971) ("plaintiff must show ... actual pecuniary loss as the result of the fraud"); *Jurich v. General Motors Corp.*, 539 S.W.2d 595, 600–01 (Mo. Ct.App.1976) ("deceit belongs to that class of tort of which pecuniary loss constitutes a part of the cause of action").

Under section 525 of the Restatement (Second) of Torts, "One who fraudulently makes a misrepresentation of fact, ... is subject to liability to the other in deceit for *pecuniary loss*." (Emphasis added.) Furthermore, in addressing the measure of damages for fraudulent misrepresentation, section 549 of the Restatement states, "The recipient of a fraudulent misrepresentation is entitled to recover ... the *pecuniary loss* ... of which the misrepresentation is a legal cause, including" the difference between the value of what was received in the transaction and its purchase price and "*pecuniary loss* suffered otherwise as a consequence of ... the misrepresentation." Restatement (Second) of Torts § 549(1)(a) and (b) (1977) (emphasis added). While the Restatement does not specifically exclude emotional distress damages in a cause of action for fraud, the repeated references to "pecuniary loss" implicitly excludes such recovery. R. Dunn, *Recovery of Damages for Fraud* 156 (1988).

Inasmuch as fraud is an economic tort directed towards redressing pecuniary losses, *Cornell*, 408 N.W.2d at 382; *Walsh*, 656 F.2d at 370, we conclude that the better reasoned approach is to disallow recovery of emotional distress damages in a fraud action. As a result, the trial court correct-

ly refused to instruct the jury that such damages are recoverable in a fraud action.

## EVIDENCE OF PSYCHIATRIC HISTORY AND PAST DRUG USE

■ On cross appeal, Turner claims that the trial court erred by admitting evidence concerning her psychiatric history and past drug use. Whether evidence is admissible is a question of law reviewed under a correctness standard. *State v. Ramirez*, 817 P.2d 774, 781 n. 3 (Utah 1991).[9]

■ Turner contends that the trial court erred in admitting evidence of her psychiatric history and past drug use because the evidence was irrelevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Utah R.Evid. 401. Quite clearly, the evidence pertaining to Turner's psychiatric history and past drug use was relevant to the determination of whether her claimed emotional distress damages under her invasion of privacy claim were the result of a preexisting condition or were caused by defendants' conduct.

Turner contends that even if the evidence relating to her psychiatric history and past drug use were relevant, the court erred in admitting it because the prejudicial effect of the evidence outweighed its probative value. Under Utah Rule of Evidence 403, relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." The trial court's determination that evidence is admissible under Rule 403 is reviewed for correctness, "[b]ut in deciding whether the trial court erred as a matter of law, we de facto grant it some discretion, because we reverse only if we conclude that it acted unreasonably in striking the balance." *Ramirez*, 817 P.2d at 781 n. 3. In *Terry v. Zions Coop. Mercantile Inst.*, 605 P.2d 314 (Utah 1979), *rev'd on other grounds, McFarland v. Skaggs Cos.*, 678 P.2d 298, 304 (Utah 1984), the Utah Supreme Court defined evidence that is "unfairly prejudicial" as evidence having

> a tendency to influence the outcome of the trial by improper means, or if it appeals to the jury's sympathies, or arouses its sense of horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions of the case.

*Id.* at 323 n. 31.

The evidence involving Turner's psychiatric history and past drug use was probative of whether her claimed emotional distress damages were the result of a preexisting condition or were caused by defendants' conduct. Having reviewed the trial court's determination that the danger of unfair prejudice did not substantially outweigh the evidence's probative value, we conclude, in light of the discretion given to a trial court in performing a Rule 403 balancing, that the court correctly admitted the evidence.

Finally, pursuant to the tort law doctrine commonly referred to as the "thin-skull" or "eggshell skull" rule,[10] Turner argues that because defendants are required to take her as they find her, the court abused its discretion in admitting evidence of her psychiatric history and past drug use. This

---

9. Decisions prior to *Ramirez* created some confusion as to the proper standard for reviewing a court's determination on admissibility of evidence. *See, e.g., Whitehead v. American Motors Sales Corp.*, 801 P.2d 920, 923 (Utah 1990) ("In reviewing questions of admissibility of evidence at trial, deference is given to the trial court's advantageous position; thus, that court's rulings regarding admissibility will not be overturned 'unless it clearly appears that the lower court was in error.'") (quoting *State v. Gray*, 717 P.2d 1313, 1316 (Utah 1986)); *State v. Griffiths*, 752 P.2d 879, 883 (Utah 1988) ("It is well settled that trial court rulings on the admissibility of evidence are not to be overturned in the absence of a clear abuse of discretion."); *Gray*, 717 P.2d at 1316 ("This Court will not disturb the ruling of the trial court on questions of admissibility of evidence unless it clearly appears that the lower court was in error."). In *Ramirez*, 817 P.2d at 781 n. 3, the Utah Supreme Court acknowledged this confusion.

10. *See* W. Page Keeton *et al., Prosser and Keeton on the Law of Torts*, § 43, at 292 (5th ed. 1984).

argument fails because "even though it is true that one who injures another takes him as he is, nevertheless the plaintiff may not recover damages for any pre-existing condition or disability she may have had which did not result from any fault of the defendant." *Brunson v. Strong*, 17 Utah 2d 364, 412 P.2d 451, 453 (1966) (footnote omitted).

## CONCLUSION

For the above-stated reasons, we conclude that the trial court (1) erred in granting j.n.o.v., (2) correctly refused to instruct the jury that emotional distress damages are recoverable in a cause of action for fraud, and (3) correctly admitted evidence concerning Turner's psychiatric history and past drug use. Other arguments raised by the parties need not be considered in view of our decision herein. Therefore, we reverse the judgment of the trial court, and remand for judgment consistent with the jury's verdict. No costs are awarded.

GREENWOOD and RUSSON, JJ., concur.