SCFC ILC, INC. d/b/a MountainWest
Financial, Plaintiff,

v.

VISA U.S.A. INC., Defendant.

VISA U.S.A. INC. and Visa International
Service Association, Delaware corpo-
rations, Counterclaimants,

v.

SEARS, ROEBUCK AND CO., a New
York corporation, Sears Consumer Fi-
nancial Corporation, a Delaware corpo-
ration, and SCFC ILC Inc. d/b/a
MountainWest Financial, Counterde-
fendants.

Civ. No. 91–C–47B.

United States District Court,
D. Utah, C.D.

Aug. 11, 1992.

Randall A. Hack, Leonard A. Gail, James D. Sonda, James H. Gale, Chicago, Ill., Gary F. Bendinger, Carol Clawson, Salt Lake City, William H. Pratt, Chicago, Richard W. Giauque, Salt Lake City, Utah, for plaintiffs and counter-defendant.

Dale A. Kimball, Heidi E. Leithead, Clark Waddoups, Salt Lake City, M. Laurence Popofsky, Stephen V. Bomse, Renata M. Sos, San Francisco, Cal., Scott R. Ryther, Jonathan A. Dibble, Elaine A. Monson, Don B. Allen, Salt Lake City, Utah, for defendants.

Dale Kimball, Heidi E. Leithead, Clark Waddoups, Salt Lake City, Utah, Judith Z. Gold, Susan Rice, Stephen V. Bomse, San Francisco, Robert G. Merritt, Renata M. Sos, San Francisco, Cal., Scott R. Ryther, Salt Lake City, Utah, for counter-claimant.

## MEMORANDUM DECISION AND ORDER

BENSON, District Judge.

This case came on regularly for hearing before the court on July 30, 1992 on various motions filed by both parties. The plaintiff[1] was represented by William H. Pratt and Gary F. Bendinger. The defendant was represented by M. Laurence Popofsky, Stephen V. Bomse, Dale A. Kimball, Clark Waddoups and Renata M. Sos.

The court heard argument on various motions including: 1) Visa's Motion for Summary Judgment on Sears' antitrust claim based on Section One of the Sherman Act; 2) Sears' Motion for Summary Judgment on Visa's antitrust counterclaim based on Section Seven of the Clayton Act; 3) Sears' Motion for Summary Judgment on Visa's non-antitrust counterclaims; 4) Sears' Motion to Bifurcate the trials of the antitrust and non-antitrust counterclaims; 5) Visa's Motion to Compel Discovery; 6) Sears' Motion to Compel the return of privileged documents; 7) Sears' Motion to Quash the subpoena sent to Sears' legal counsel, Kirkland & Ellis; and 8) Visa's Motion for Additional Discovery. At the hearing, the Court granted Visa's Motion for Additional Discovery, allowing Visa the opportunity to depose Mr. B.J. Martin regarding Sears' plan for Prime Option in light of Sears' recent Salt Lake City-based press conference on the subject. In this order, the court will not address further the Motion for Additional Discovery.

## BACKGROUND

The background of this case is set forth in this court's previous order at 784 F.Supp. 822 (D.Utah 1992). Briefly, some of the pertinent facts are as follows. Visa is a joint venture corporation that has credit card agreements with approximately 19,-000 financial institutions in the United States. Sears is the owner of the Discover card, a nationally distributed credit card which competes for business with Visa. In 1989, Sears applied for a Visa membership through Greenwood Trust, a Delaware bank owned by Sears. According to a memorandum written by the then Senior Vice President for Operations of Discover Card, B.J. Martin, at least one purpose of the application was to permit Discover to "learn everything that was going on with its competitor, Visa." Visa denied the Greenwood Trust application and at the same time passed Bylaw 2.06 which would prevent Sears, any Sears affiliate, or any other direct competitor of Visa from becoming a Visa member.

Bylaw 2.06 reads as follows:

If permitted by applicable law, the corporation shall not accept for membership any applicant which is issuing, directly or indirectly, Discover cards or American Express cards, or any other cards deemed competitive by the Board of Di-

---

1. Throughout the plaintiff's briefs, it has referred to itself as MountainWest. For purposes of this order, when referring to the plaintiff generally, the court will use Sears.

rectors; an applicant shall be deemed to be issuing such cards if its parent, subsidiary or affiliate issues such cards.

After Visa's adoption of Bylaw 2.06, the top-ranking official of Sears Financial personally visited several Visa directors to dispute Visa's decision to pass Bylaw 2.06, and to threaten legal action if Visa failed to change the bylaw. No legal action was taken at that time.

In May 1990, Sears tried again to gain entry into Visa by purchasing from the Resolution Trust Corporation the assets of MountainWest Savings and Loan, an insolvent Savings and Loan in Sandy, Utah, that had a relatively small Visa membership of approximately 6,000 cardholders. Sears was aware of Visa's desire not to allow Sears as a member. Sears' acquisition of MountainWest was not communicated directly to Visa. However, Visa eventually discovered MountainWest's affiliation with Sears when Datacard, a credit card printer, requested that Visa approve the design of a new MountainWest Visa card blank and the printing of 1.5 million MountainWest Visa cards. Visa was informed by Datacard that the entity placing the order was Discover Card Services. The entity placing the order, however, was not Discover but was in fact Sears acting through MountainWest. Sears did not expect this information to be communicated to Visa and instructed Datacard to tell Visa that the identification of Discover as the card issuer on the previous order had been due to Datacard's mistake. Nonetheless, Visa discovered the true identity of the owner of MountainWest and refused to authorize the printing of the 1.5 million MountainWest Visa credit cards. This lawsuit ensued.

## DISCUSSION

### I. *Visa's Motion for Summary Judgment*

#### A. Visa's Argument

Visa argues that it is entitled to Summary Judgment because the antitrust laws of the United States do not require a private business such as Visa to share its property with competitors. Visa asserts that because of its affiliation with Sears, MountainWest should not be allowed to become a member of Visa. Sears, Visa maintains, is a viable competitor in the credit card business, and does not need to be a member of Visa in order to successfully compete in the credit card market. Visa contends that "[a] joint venture's refusal, without more, to share its property with a competitor creates no viable antitrust claim. So long as the venture, itself, exists for legitimate, efficiency-creating purposes it has no more of a duty to share the fruits of its effort and innovation than any other lawful private business." (Visa's Memorandum in Support of Summary Judgment at p. 7). Furthermore, Visa claims that Sears can present a viable antitrust claim only if (1) Sears proves that Visa possesses market power in the relevant market and Sears is foreclosed from competition with cardholders and merchants; or (2) a Visa membership is an essential facility for Sears to compete in the general purpose credit card market.

In addition, Visa argues that Sears cannot prove that its exclusion by Visa has harmed competition in any way. Visa asserts that its actions are neither the type of restraint nor the type of harm that the antitrust laws were designed to cover. Visa asks the court to find as a matter of law that its policy assertions are correct.

Visa maintains that a business built and made successful by its members cannot be forced to share with competitors what it has created. In other words, Sears should not be allowed a "free ride" on Visa's joint venture.

#### B. Sears' Argument

Sears asserts that Visa is not entitled to Summary Judgment because there are genuine issues of material fact that require this case to go to trial. Sears maintains that Visa has little direct legal support for its assertions. Sears contends that an open membership joint-venture such as Visa does not have an unqualified right to refuse to grant membership status to a competitor. Such a refusal, says Sears, must be in accordance with the antitrust laws.

In this case, Sears argues that Visa's refusal to grant admission to Sears as a Visa member constitutes an illegal use of market power with a result that is anticompetitive in violation of Section One of the Sherman Act.

### C. The Relevant Law

This is a unique case in antitrust jurisprudence. There is no controlling authority directly on point. There are, however, a number of cases, while not identical to this case, which offer guidance for resolving Visa's Motion for Summary Judgment.

*Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.*, 472 U.S. 284, 105 S.Ct. 2613, 86 L.Ed.2d 202 (1985), is instructive. Northwest Wholesale Stationers was a cooperative made up of approximately 100 office supply retailers in the Pacific Northwest. Pacific Stationery & Printing Co. was expelled from the cooperative without explanation. The issue before the Supreme Court was whether the expulsion of Pacific was an unreasonable restraint of trade in violation of Section One of the Sherman Act. Pacific challenged the action of Northwest in barring it from continued membership. In determining whether Northwest's actions were *per se* illegal, the court held that "[u]nless the cooperative possesses market power or exclusive access to an element essential to effective competition, the conclusion that expulsion is virtually always likely to have an anticompetitive effect is not warranted." *Id.* at 296, 105 S.Ct. at 2620–21. The Court further held that "[a]bsent such a showing with respect to a cooperative buying arrangement, courts should apply a rule-of-reason analysis." *Id.* at 297, 105 S.Ct. at 2621. While *Northwest Wholesale* differs from the case at bar, its treatment of a cooperative gives significant guidance to the court on how it should treat a joint venture.

■ Visa is not persuasive in its argument that a joint venture has absolutely no duty to allow into its venture a competitor and that the antitrust laws cannot force it to allow Sears into the Visa joint venture. The Supreme Court has stated unequivocally that "[t]he high value that we have placed on the right to refuse to deal with other firms does not mean that the right is unqualified." *Aspen Skiing Co. v. Aspen Highland Skiing Corp.*, 472 U.S. 585, 601, 105 S.Ct. 2847, 2856, 86 L.Ed.2d 467 (1985). While *Aspen Skiing Co.* was a case brought under Section Two of the Sherman Act, the analysis in this instance between Section One and Section Two is similar. Visa's argument that it has an absolute right not to deal with Sears is inaccurate. That right is a qualified right which must comply with the antitrust laws.

■ Visa argues that a joint venture, whether its membership is open or closed, should be treated like a single entity with the ability to exclude any of its competitors. An open joint venture, such as Visa, is similar to the cooperative in *Northwest Wholesale*. As in *Northwest Wholesale*, the Court must apply a rule-of-reason analysis. *Id.*

"[T]he inquiry mandated by the Rule of Reason is whether the challenged agreement is one that promotes competition or one that suppresses competition." *National Society of Professional Engineers v. U.S.*, 435 U.S. 679, 691, 98 S.Ct. 1355, 1365, 55 L.Ed.2d 637 (1978). Under the rule-of-reason analysis, the competitive effects of an agreement "can only be evaluated by analyzing the facts peculiar to the business, the history of the restraint, and the reasons why it was imposed." *Id.* at 692, 98 S.Ct. at 1365. The Supreme Court has held that it is inappropriate for this court, as Visa asks it to do, to determine on the present state of the factual record that Visa's policy position is correct. "[T]he purpose of the analysis is to form a judgment about the competitive significance of the restraint; it is not to decide whether a policy favoring competition is in the public interest, or in the interest of the members of an industry." *Id.; see also, Eastman Kodak Co. v. Image Technical Services, Inc.*, — U.S. —, —–—, 112 S.Ct. 2072, 2088–89, 119 L.Ed.2d 265 (1992) ("[W]hen we weigh the risks of determining procompetitive behavior by proceeding to trial against the risk that illegal behav-

ior go unpunished, the balance tips against summary judgment."). Visa's policy argument˙ is well taken by the court, but this court can only follow the law as articulated by statute and cases. This court cannot make policy. Visa's argument is better suited in this instance as one made at trial.

### D. Section One of the Sherman Act

Sears' complaint is brought under Section One of the Sherman Act. Section One prohibits "every contract, combination ... or conspiracy, in restraint of trade or commerce...." 15 U.S.C. § 1. Section One has been interpreted as prohibiting only "unreasonable" restraints of trade. *Northwest Wholesale,* 472 U.S. at 289, 105 S.Ct. at 2616. In order to determine whether Visa violated Section One, the rule-of-reason must be used. To prove a violation of the antitrust laws using the rule-of-reason, Sears must submit sufficient evidence to prove that an agreement existed which unreasonably restrained trade in the relevant market. *Reazin v. Blue Cross & Blue Shield of Kansas,* 899 F.2d 951, 959 (10th Cir.) *cert. denied, Blue Cross & Blue Shield, Inc. v. Reazin,* 497 U.S. 1005, 110 S.Ct. 3241, 111 L.Ed.2d 752 (1990). Furthermore, the inquiry is whether "the challenged agreement is one that promotes competition or one that suppresses competition." *National Society of Professional Engineers,* 435 U.S. at 691, 98 S.Ct. at 1365.

■ The court cannot find from the facts, submitted to date by the parties, using the rule-of-reason analysis, that the antitrust laws were or were not violated. The court must be fully informed of all the facts in order to make such a decision. There are numerous facts in dispute that require the court to hear the evidence at trial. Generally speaking, these facts pertain to the areas of (1) Visa's intent in passing and enforcing Bylaw 2.06; (2) the relevant geographic and product markets; (3) the effect on competition of Visa's decision not to grant Sears' application for membership; and (4) Visa's market power. Only after hearing all the evidence can the court determine whether facts remain in

dispute which should be determined by a jury, as the finder-of-fact, or whether this case may be decided as a matter of law.

Visa, with considerable force of persuasion, asks the court to rule as a matter of law that because Sears appears to be a viable competitor in the credit card market Visa's actions in excluding Sears from membership cannot be in violation of Section One of the Sherman Act. This should be the result, Visa argues, despite Visa's intent in excluding Sears, irrespective of Visa's market power, and without regard to whether such an exclusion is anticompetitive or harmful to consumers. This the court cannot do. Visa seeks a policy interpretation of first impression in a case where virtually all of the traditional antitrust areas of inquiry are in dispute. There is no agreement as to Visa's relative market power; there are serious differences of opinion by the parties as to Visa's motives in passing Bylaw 2.06, and legal experts and economists retained by both sides disagree with one another over the effect on competition of Sears' exclusion.

As tempting as it may be for a trial judge to interpret the Sherman Act in the manner presented by Visa, or, for that matter, in the manner proposed by the movant in *Northwest Wholesale* (i.e. *Pacific Stationery* argued for a *per se* violation by the cooperative, much as Sears could have attempted to claim a *per se* illegal horizontal group boycott by Visa member banks in this case), the Court is not permitted such interpretive authority where there exist genuine disputes of fact that are traditionally recognized as material in rule-of-reason cases. The general language of Section One increases the temptation to make legal, as opposed to factual, conclusions, but it is the simplicity of the same language that compels this court to exercise restraint. Section One clearly prohibits "a combination, ... in restraint of trade." In the case now before the court, we have a decision by the Visa board of directors to exclude Sears from Visa membership on any terms. That appears to constitute a combination among separate actors to restrain trade. Whether such a restraint is unreasonable and therefore in

violation of the antitrust laws, or reasonable (i.e. procompetitive) and therefore not in violation of the antitrust laws, becomes the issue. *Reazin*, 899 F.2d at 960. In the absence of clear guidance from the United States Supreme Court or the Tenth Circuit Court of Appeals requiring the adoption of Visa's policy argument as the correct interpretation of what Congress intended when it passed the Sherman Act in 1890, this Court is not in a position to grant Summary Judgment as a matter of law. The statute itself, and the interpretation of it, especially the Supreme Court's language in *Northwest Wholesale, Aspen Skiing Co.*, and most recently, *Eastman Kodak*, and the Tenth Circuit's analysis in *Reazin* lead the court to the opposite result. Sears is entitled on the present state of the record to a trial.

■ Visa's argument that Sears' Section One claim must fail unless it can be shown that Visa membership constitutes an "essential facility" for Sears' effective competition in the general credit card market is also not well taken. Notwithstanding Professor Areeda's considerable musings on the subject, (*see, e.g.*, Visa's Memorandum in Support of Summary Judgment at pp. 8, 9, 18, 20), there is no controlling precedent stating that absent an essential facilities case, a claim such as the one asserted by Sears in this case must necessarily fail. There is no attempt by Sears to describe this case as an essential facilities case. Sears simply asserts that given its view of Visa's market power in the relevant market (70% to 90% of the general credit card market in the United States), Visa must accept Sears as a Visa member or be in violation of Section One of the Sherman Act. The finding of an essential facility is not at issue in this case, and need not be.

Based on the foregoing, Sears' antitrust claim cannot at this point be decided on Summary Judgment. Therefore, Visa's Motion for Summary Judgment is denied.

II. *Sears' Motion for Summary Judgment on Visa's Antitrust Counterclaim*

Count II of Visa's Counterclaim against Sears is a cause of action based on Section Seven of the Clayton Act. 15 U.S.C. § 18 ("Section Seven"). Sears has moved for Summary Judgment on this claim, arguing that Visa's antitrust suit is prohibited by the Bank Merger Act. 12 U.S.C. § 1828.

Pursuant to the Bank Merger Act, proposed bank mergers must be investigated and approved by the Federal Deposit Insurance Corporation before the merger can take place. Such mergers, however, are granted special immunity from antitrust litigation. A merger which has been approved and consummated under the Bank Merger Act "may not thereafter be attacked in any judicial proceeding on the ground that it alone and of itself constituted a violation of any antitrust laws other than [Section Two of the Sherman Act]." 12 U.S.C. § 1828(c)(7)(C).

■ The Bank Merger Act only grants protection from suits which challenge the merger "alone and of itself." *Id.* It does not prohibit suits which challenge more than the merger transaction. Suits which challenge conduct subsequent to the merger are allowed under the Act.

■ In the present case, Sears' acquisition of MountainWest was approved and consummated pursuant to the Bank Merger Act. Thus, Sears has brought this motion, arguing that the merger has immunity from antitrust litigation.

Visa argues that its Section Seven claim is not barred by the Act because it does not challenge the acquisition "alone and of itself." The counterclaim, it is argued, challenges more than Sears' initial acquisition of MountainWest—it also challenges Sears' post-acquisition conduct.

Sears responds by arguing that Visa's counterclaim cannot possibly challenge post-acquisition conduct, because no such cause of action is allowed under Section Seven. It asserts that Section Seven only allows suits which challenge the initial acquisition of stock.

■ Thus, the primary issue with respect to this motion is whether Section Seven is limited to suits challenging the

initial acquisition of ownership, or whether it also allows for suits based on post-acquisition conduct. If Section Seven only allows suits which challenge the initial stock purchase, Visa's counterclaim is prohibited by the Bank Merger Act. If, however, Section Seven allows suits which challenge anticompetitive conduct after the initial merger, the counterclaim is proper and is not barred by the Act.

The relevant portion of Section Seven states:

No corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no corporation subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another corporation engaged also in commerce, where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly.

15 U.S.C. § 18.

Visa cites to *United States v. E.I. Du Pont de Nemours & Co.*, 353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057 (1957), and other cases [2] as support for its position that Section Seven allows for separate causes of action based on conduct occurring after the initial acquisition of ownership.

Sears maintains that Section Seven suits may not be based upon post-acquisition conduct. It concedes that such conduct may be relevant as *evidence* in determining the anticompetitive effects of a merger. However, Sears asserts, every Section Seven suit is ultimately a challenge to the stock acquisition itself. Sears argues that such an analysis is not inconsistent with *Du Pont* and the other cases cited by Visa. In each case, "the legality of the acquisition itself, rather than the conduct offered to support the challenge to that acquisition, was ultimately at issue." (Sears' Reply Memorandum in Support of Summary

Judgment on Visa's Antitrust Counterclaims at p. 3).

The court has carefully reviewed *Du Pont* and the other cases cited by Visa. The court finds that *Du Pont*, standing alone, is inconclusive as to whether Section Seven provides for separate causes of action based on post-acquisition conduct. However, this issue was resolved by the Supreme Court in *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975).

In *Continental Baking*, the Supreme Court identifies the type of suits which may be brought under Section Seven. It defines the word "acquisition" broadly, so as to allow for suits based not only upon the purchase of stock, but upon the subsequent holding and use of that stock.

In *Continental Baking* the government brought suit against a baking company for failure to comply with a consent order issued by the Federal Tax Commission. The order prohibited the company from "acquiring" other bakeries for a certain period of time. A dispute arose as to whether the word "acquiring" connotes a single or continuing violation. The Court was called upon to interpret the word. The Court stated:

We need not go beyond the Clayton Act itself to conclude that "acquisition" as used in § 7 of the Act means holding as well as obtaining assets.... [T]he framers of the Act did not regard the terms "acquire" and "acquisition" as unambiguously banning only the initial transaction of acquisition; rather, they read the ban against "acquisition" to include a ban against holding certain assets.

*Id.* at 240, 95 S.Ct. at 936. The Court then clarified its holding in *Du Pont*, using the case as support for its decision. It stated:

Similarly, this Court's opinion in [*Du Pont*] rests upon the conclusion that "acquisition" can mean, and in the context of § 7 of the Clayton Act does mean,

**2.** Specifically, Visa relies on *Mississippi River Corp. v. F.T.C.*, 454 F.2d 1083, 1088 (8th Cir. 1972); *Ricchetti v. Meister Brau, Inc.*, 431 F.2d 1211, 1214 (9th Cir.1970), *cert. denied*, 401 U.S. 939, 91 S.Ct. 934, 28 L.Ed.2d 219 (1971); *Rob-*

*ert's Waikiki U–Drive, Inc. v. Budget Rent–A–Car Systems, Inc.*, 491 F.Supp. 1199, 1224 (D.Haw. 1980), *aff'd*, 732 F.2d 1403 (9th Cir.1984); and, *Julius Nasso Concrete Corp. v. Dic Concrete Corp.*, 467 F.Supp. 1016, 1023 (S.D.N.Y.1979).

both the purchase of rights in another company and the retention of those rights.

*Id.* 420 U.S. at 241, 95 S.Ct. at 937. The Court continues:

> "[A]cquisition" under § 7 is not a discrete transaction but a *status* which continues until the transaction is undone.
>
> Thus, under the order ... "acquiring" must mean both the act of first obtaining assets and the *retention* and *use* of those assets.

*Id.* at 242–43, 95 S.Ct. at 938 (emphasis added).

This language makes it clear that the word "acquisition" encompasses more than the initial stock purchase. A Section Seven suit may challenge the acquisition, holding, and/or use of stock. It is not limited to suits against acquisitions.

In the present case, Visa's counterclaim challenges more than Sears' initial acquisition. It also challenges Sears' continued ownership of MountainWest. It attacks the way Sears has used (and intends to use) MountainWest as a means of participating in the Visa credit card program. This "holding" and "use" of MountainWest, it is alleged, constitutes a violation of Section Seven.

The Bank Merger Act does not prohibit Visa's counterclaim. The counterclaim does not challenge the merger transaction alone and of itself, and is therefore not barred by the Act. Accordingly, Sears' Motion for Summary Judgment on Visa's Antitrust Counterclaim is denied.

### III. *Sears' Motion for Summary Judgment on Visa's Non-Antitrust Counterclaims*

Summary Judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." It is the movant's burden to demonstrate the absence of a genuine issue of a material fact and to show that it

is entitled to judgment as a matter of law. Sears bears this burden as it has moved the court for Summary Judgment on Visa's non-antitrust counterclaims of fraud, trademark infringement and breach of contract.

Sears attempts to subject Visa to Summary Judgment on its fraud claim by asserting that Visa has failed to establish essential elements of the claim. In order to prevail on a claim for fraud, Visa must establish four separate elements: (1) that the relationship between the parties was such that Sears owed a duty of disclosure to Visa, or that MountainWest made a false affirmative statement; (2) that the misrepresentation was made with knowledge of its falsity; (3) that Visa reasonably relied on the misrepresentation; and (4) that damages resulted from the misrepresentation. If even one element is not established, the claim for fraud cannot proceed.

■ Whether a duty to disclose existed between the parties is a disputed issue. A duty to disclose will be imposed where a fiduciary relationship exists between two parties *Von Hake v. Thomas*, 705 P.2d 766, 769 (Utah 1985). Visa suggests that a fiduciary relationship exists between joint venturers, *Lynch v. MacDonald*, 12 Utah 2d 427, 367 P.2d 464, 468 (1962), but the Visa enterprise has not been definitively categorized as a joint venture. In *National Bancard Corp. v. VISA USA*, 779 F.2d 592, 601–602 (11th Cir.) *cert. denied*, 479 U.S. 923, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986), for example, the court stated that "Visa exhibits characteristics of a joint venture, even if it is not technically a joint venture." The association between Visa and MountainWest remains disputed and thus so does the question of whether a duty to disclose existed.

■ Regardless of the classification of the relationship, however, Visa has alleged that a false affirmative statement was made in a membership agreement in which MountainWest stated that it was in compliance with Visa's requirements for membership, including Bylaw 2.06. Visa cites a statement made by Mr. Phillip Ware, who handles all day-to-day operations for Moun-

tainWest. Visa claims that Mr. Ware indicated to Visa that the relationship between MountainWest and Sears was "remote". Based on the fact that MountainWest is a subsidiary of Sears, that statement could provide sufficient basis for the first element necessary for Visa's fraud claim.

> The rule has long been settled ... that although one may be under no duty to speak as to a matter, "if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells but also not to suppress or conceal any facts within his knowledge which materially qualify those stated. If he speaks at all he must make a full and fair disclosure."

*Lacher v. Superior Court,* 230 Cal.App.3d 1038, 1046–47, 281 Cal.Rptr. 640, 643 (1991) (quoting *Rogers v. Warden,* 20 Cal.2d 286, 289, 125 P.2d 7, 9 (1942)).

Visa must also show that the alleged misrepresentation was made with knowledge of its falsity. There is enough evidence in the record to establish at least a genuine issue of material fact in regard to this element of the fraud claim. Sears attempts to justify MountainWest's statement on its membership application that it was in compliance with all of Visa's operating regulations by stating that it was MountainWest's "legal position" that Bylaw 2.06 was invalid and did not apply to Sears. However, the question on the application did not ask whether or not MountainWest believed Visa's bylaws and regulations were valid, it simply asked whether MountainWest complied with Visa's membership requirements. MountainWest knew the provisions of Bylaw 2.06 and knew that its affiliation with Sears was contrary to the bylaw. MountainWest's "legal position" defense does not definitively establish that the misrepresentation was made without knowledge of its falsity.

Additionally, when Visa was asked to approve the credit card design for 1.5 million Prime Option MountainWest Visa cards, Sears instructed Datacard, the credit card printer, to inform Visa that the identification of Discover Card Services as the orderer had been due to Datacard's mistake. These factors combine to effectively establish that there is a question whether MountainWest knew that it was misrepresenting information to Visa.

■ Visa must also establish that its reliance on MountainWest's statement was reasonable in order to prevail on its fraud claim. *Cheever v. Schramm,* 577 P.2d 951, 954 (Utah 1978). Sears argues that Visa should have known of the affiliation between Sears and MountainWest because it was published in a number of industry publications and was known by several prominent Utahns.

Sears argues that Visa had a duty to inquire into MountainWest's affiliation with Sears; however, Visa could hardly have inquired into the affiliation when Visa did not know what facts were being withheld. Visa relies on the party submitting the application to make full and candid disclosure. In *Elder v. Clawson,* 14 Utah 2d 379, 384 P.2d 802, 805 (1963), the court stated that a duty to disclose may arise in the narrow circumstances where one party to a contemplated business transaction has knowledge "which is not within the fair and reasonable reach of the other party and which he could not discover by the exercise of reasonable diligence," particularly where "the other party relies on him to communicate to him the true state of facts to enable him to judge the expediency of the bargain." Conversely, however, Sears argues that Visa "may not lay its failure to protect its own interests at the defendant's feet in the form of an allegation of fraud." *Sugarhouse Fin. Co. v. Anderson,* 610 P.2d 1369, 1374 (Utah 1980). The reasonableness of Visa's reliance remains a genuine issue of material fact.

■ The last element of a claim for fraud is damages. Visa must establish that it sustained damages by reason of the alleged misrepresentation or non-disclosure. *Dilworth v. Lauritzen,* 18 Utah 2d 386, 424 P.2d 136, 138 (1967). Visa has established sufficient evidence to allow this claim to proceed. Although the alleged damages are negligible, they are damages sustained as a result of the alleged fraud. Mr. Steven Vondale, who reviewed the

Prime Option Order submitted by Data-card, would not have had to research the order at all if MountainWest had acted candidly with Visa. "While the amount of damage need not be determined with mathematical precision, it must be supported by the evidence in the record." *Vaughn v. Gen. Foods Corp.*, 797 F.2d 1403, 1416 (7th Cir.1986), *cert. denied*, 479 U.S. 1087, 107 S.Ct. 1293, 94 L.Ed.2d 149 (1987). Summary Judgment is not appropriate for the fraud claim. Visa has brought forth sufficient evidence to establish genuine questions of material fact in regard to each element of the claim.

■ Visa's claim for trademark infringement is founded upon the provisions of the Lanham Act. 15 U.S.C. § 1114. Visa states that Sears has infringed on Visa's marks within the meaning of the Act because Visa never licensed Sears to issue Visa cards and, in fact, expressly prohibited Sears from issuing the cards.

Sears argues that a trademark infringement claim cannot proceed because the Visa cards issued by MountainWest were genuine and Visa expressly consented to allow MountainWest to continue servicing its pre-existing Visa card accounts. A basic principle of trademark law is that there can be no liability for trademark infringement when the trademark owner consents to use of the mark.

Sears cites numerous occasions when Visa's attitude has been permissive in allowing other Sears affiliates to participate in the Visa program. Sears states that because Visa consented to the continuation of MountainWest's Visa card program throughout the time period relevant to the pendency of this lawsuit, Visa's trademark infringement claim fails as a matter of law. Visa responds by stating that Sears knowingly "used Visa's trademark after the expiration of a trademark license, and before the issuance of any valid new one. Sears' acquisition of MountainWest Savings terminated any authority MountainWest had to issue Visa cards." (Visa's Memorandum in Opposition to Motion for Summary Judgment on Visa's Non-antitrust Counterclaims at p. 32). Visa also cites *Lone Mountain Prod. Co. v. Natural Gas Pipeline Co.*, 710 F.Supp. 305, 311 (D. Utah 1989), for the proposition that "the fact that a party has not enforced a provision in another contract on a previous occasion does not grant the other party a license to ignore that provision in a subsequent contract."

To be entitled to damages for trademark infringement, Visa bears the burden of establishing either that Visa has lost business and profits as a result of Sears' alleged infringement, or that Sears has shown an egregious display of bad faith in infringing on Visa's mark. *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 917, 919 (Fed.Cir.1984).

■ Although actual damages may not be readily provable, Visa may be able to show bad faith on the part of Sears. Proof of actual damages is unnecessary to support a trademark claim where the infringer has acted in bad faith. *See Web Printing Controls Co. v. Oxy–Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir.1990). Sears argues that Visa's consent to allow MountainWest to continue servicing its nearly 6,300 Visa cardholders defeats any claim that Visa may have for trademark infringement. Visa claims that the acquisition of MountainWest by Sears was a result of fraud and as a result of that fraud, MountainWest's license to issue Visa cards should be revoked. While Visa's consent may seem to undermine its claim for trademark infringement, it may still prevail if bad faith is shown. There is at least a triable issue as to whether Sears wilfully deceived Visa after it learned that Visa would not admit Sears to membership.

Furthermore, the resolution of the legality of Bylaw 2.06 is critical to the determination of the trademark infringement claim. If the bylaw is valid, then Sears' continued distribution of Visa cards after the acquisition of MountainWest constitutes trademark infringement. However, if the bylaw is invalid, there is no basis for a claim of trademark infringement. A company authorized to issue Visa cards was doing precisely that. The determination of the trademark infringement claim is

contingent upon the resolution of Bylaw 2.06 and thus, Summary Judgment is inappropriate at this time.

Visa's claim for breach of contract is similarly unsuited for Summary Judgment. Sears states that "based on the Court's opinion earlier this year, the only remaining issue before this Court is whether Bylaw 2.06 is valid under the antitrust laws." This statement only begs the question as to the validity of Bylaw 2.06 and necessarily precludes Summary Judgment until validity of the bylaw is resolved.

There is sufficient evidence in the record to allow Visa's non-antitrust counterclaims to proceed to trial, accordingly Sears' Motion for Summary Judgment on the non-antitrust counterclaims is denied.

## IV. Sears' Motion to Bifurcate the Antitrust Issues and the Non–Antitrust Issues

Sears has moved to bifurcate the trial of the antitrust issues and the non-antitrust issues. In deciding whether to bifurcate the trial, the court has broad discretion. As stated in *Eastridge Dev. Co. v. Halpert Assocs.,* 853 F.2d 772, 781 (10th Cir.1988):

> The Federal Rules of Civil Procedure give district courts broad discretion in deciding whether to sever issues for trial and the exercise of that discretion will be set aside only if clearly abused.

(quoting *Easton v. City of Boulder, Colo.,* 776 F.2d 1441, 1447 (10th Cir.1985), *cert. denied,* 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986)).

In using its discretion the court is guided by Federal Rule of Civil Procedure 42(b):

> The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

The controlling considerations in Rule 42(b) are economy and avoiding prejudice. In light of these considerations the court hereby bifurcates this case into two proceedings.

The first proceeding will address only the issue of antitrust liability. More specifically, the first proceeding will determine liability under Sears' Section One Sherman Act claim, and Visa's Section Seven Clayton Act counterclaim. The second proceeding will determine antitrust damages, if necessary, and fully adjudicate all other claims and counterclaims. Whether both proceedings will use the same jury will be decided after consultation with counsel at or before the final pre-trial conference.

Bifurcation will increase trial efficiency. There may be no need to hold the second proceeding. Even if there is a second proceeding the number of issues involved may be reduced by the outcome of the first proceeding. Finally, because some evidence pertinent to the non-antitrust counterclaims, particularly those dealing with fraud and bad faith, probably will not be relevant to the antitrust dispute, the first proceeding may be shorter than originally anticipated.

Bifurcation will also avoid the possibility of unfair prejudice to either party. Visa has alleged several counterclaims which could prejudice or confuse the outcome of the antitrust dispute. Visa has alleged fraudulent activity by both Sears and its counsel. Visa is seeking to compel evidence from Sears' counsel to further investigate the fraud charges. Sears argues that its counsel may need to be called as witnesses to defend against the fraud charges. Calling trial counsel could have a prejudicial effect on the antitrust trial. Even if the attorneys were not called, allowing Visa's fraud claims in the same action as the antitrust claims could undermine the focus of the trier-of-fact on the important antitrust issues raised in this action.

Visa has also alleged unfair trade practices and trademark infringement. Visa

will support these allegations by attempting to show Sears' bad faith and improper conduct. As discussed above, this type of evidence could prejudice or confuse the trial of the antitrust issues.

From the outset this case has focused on the antitrust dispute. Visa's non-antitrust counterclaims will raise arguments and introduce evidence which could hinder a fair trial of the antitrust issues. By bifurcating the trial the court will insure a fair, unprejudiced decision on the merits of the antitrust dispute without the complications and confusion which could arise from the other claims and counterclaims. Given the importance of the antitrust dispute the court believes it is essential to bifurcate; providing a clear, uncluttered decision in the first proceeding, addressing only antitrust liability.

V. *Both Parties' Motions to Compel Discovery and Sears' Motion to Quash Subpoena*

Visa's Motion to Compel Discovery, Sears' Motion to Compel Discovery, and Sears' Motion to Quash the Subpoena sent to Kirkland & Ellis concern discovery disputes relating to Visa's non-antitrust counterclaims. In light of the court's ruling on the Motion to Bifurcate, the court finds that it is premature to rule on these motions at this time. The court reserves ruling on these motions until a trial date and scheduling order on the non-antitrust counterclaims has been established after consultation with counsel for the parties.

CONCLUSION

Based on the foregoing,

IT IS HEREBY ORDERED

1) Visa's Motion for Summary Judgment is DENIED.

2) Sears' Motion for Summary Judgment on Visa's antitrust counterclaim is DENIED.

3) Sears' Motion for Summary Judgment on Visa's non-antitrust counterclaims is DENIED.

4) Sears' Motion to Bifurcate the trial of the antitrust and non-antitrust issues is GRANTED insofar as the first proceeding will determine liability on the antitrust issues, and the second proceeding will determine damages, if necessary, and the non-antitrust claims and counterclaims.

5) Visa's Motion to Compel Discovery, Sears' Motion to Compel Discovery and Sears' Motion to Quash Subpoena are continued pending further consultation with counsel.