MIDWESTERN MACHINERY CO., INC.,
Brian F. Gagan, Sharon Tolbert Glover,
Charles M. Koosmann, Laurie I. Laner,
Jack Reuler, Michael W. McNabb and
Nigel Linden, Plaintiffs,

v.

NORTHWEST AIRLINES,
INC., Defendant.

No. Civ. 97–1438 (DSD/JMM).

United States District Court,
D. Minnesota.

Jan. 12, 1998.

Richard Ihrig, Lindquist & Vennum, Minneapolis, MN, Seymour J. Mansfield, Richard J. Fuller, Mansfield & Tanick, Minneapolis, MN, Lewis A. Remele, Jr., Bassford, Lockhart, Truesdell & Briggs, Minneapolis, MN, James William Rude, Frommelt & Eide, Minneapolis, MN, Christopher W. Madel, Winthrop & Weinstine, St. Paul, MN, Rodney Austin Wilson, Wilson Law Office, Minneapolis, MN, Karl Craig Wildfang, Winthrop & Weinstein, Minneapolis, MN, for plaintiffs.

Thomas W. Tinkham, Carol Alice Peterson, Dorsey & Whitney, Minneapolis, MN, James P. Denvir, Donald L. Flexner, Crowell & Moring, Washington, DC, Parker C. Folse, III, Susman Godfrey, Seattle, WA, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on the motion of defendant to dismiss the plaintiffs' complaint. Based on a review of the file, record and proceedings herein, the court grants defendant's motion.

## BACKGROUND

Plaintiffs are consumers who, since 1987, have regularly traveled at company or personal expense for business or pleasure with defendant Northwest Airlines, Inc. ("Northwest").[1] Northwest is a Delaware corporation with its principal place of business in Eagan, Minnesota. Northwest is wholly owned by Northwest Airlines Corporation, its parent holding corporation. Northwest provides scheduled commercial air transportation passenger services from its hub at the Minneapolis–St. Paul International Airport ("MSP"), and to and from other airports in the United States.

In January 1986, the parent company of Northwest and Republic Airlines, Inc. ("Republic"), a Wisconsin corporation and air carrier, announced that they had reached an agreement pursuant to which Northwest would acquire Republic. Northwest and Republic jointly filed an application for an exemption from the requirements of the Federal Aviation Act and the Department of Transportation's regulations to the extent necessary to allow Northwest to acquire control of Republic. In the alternative, Northwest and Republic requested approval of the transaction under section 408 of the Federal Aviation Act, 49 U.S.C. § 1378. From January 1, 1985 until December 31, 1988, the DOT was the sole federal agency responsible for deciding whether to permit proposed airline mergers.[2] Pursuant to section 408, the DOT was to reject the transaction:

(A) if it would result in a monopoly or would be in furtherance of any combination or conspiracy to monopolize or to attempt to monopolize the business of air transportation in any region of the United States; or

(B) the effect of which in any region of the United States may be substantially to lessen competition, or to tend to create a monopoly, or which in any other manner would be in restraint of trade, unless the Board finds that the anticompetitive effects of the proposed transaction are outweighed in the public interest by the probable effect of the transaction in meeting significant transportation conveniences and needs of the public, and unless it finds that such significant transportation conveniences and needs may not be satisfied by a reasonably available alternative having materially less anticompetitive effects.

---

1. Plaintiffs have alleged class allegations pursuant to Rule 23 of the Federal Rules of Civil Procedure, however, the plaintiffs have not yet sought or attained class certification.

2. Prior to 1978, the Civil Aeronautics Board ("CAB") was responsible for regulating the airline industry, including having the exclusive authority to approve or disapprove mergers. The CAB's approval of an airline merger automatically conferred broad antitrust immunity on the parties to the merger for their subsequent conduct. *See* 49 U.S.C.App. § 1384 (1976). In 1978, Congress enacted the Airline Deregulation Act ("ADA") of 1978, which eliminated the CAB and provided that as of January 1, 1985, the DOT would assume responsibility for the approval or disapproval of mergers, which would continue until January 1, 1989, to be assumed by the Department of Justice.

*See* 49 U.S.C.App. § 1378(b)(1). The United States Court of Appeals for the District of Columbia was given exclusive jurisdiction to review DOT determinations. *See* 49 U.S.C.App. § 1486(d). Northwest and Republic did not seek antitrust immunity for the transaction. The DOT conducted an expedited show-cause proceeding and approved the acquisition of Republic by Northwest. In permitting the merger to be consummated, the DOT did not grant antitrust immunity to the transaction.

On June 17, 1997, plaintiffs filed a complaint against Northwest, challenging that the merger in January 1986 between Northwest and Republic has had, and continues to have, the effect of substantially lessening competition in the relevant markets, in violation of section 7 of the Clayton Act, 15 U.S.C. § 18. Specifically, plaintiffs challenge the acquisition and holding by Northwest of the stock and assets of Republic. Plaintiffs seek injunctive relief and treble damages. Plaintiffs allege that Northwest has exercised its market power, allegedly gained as a result of its unlawful acquisition of Republic, by significantly raising its prices. In support of its claim, plaintiffs cite to studies which have documented the substantially higher-than-average fares charged to passengers flying to or from MSP. Plaintiffs assert post-merger anticompetitive conduct on the part of Northwest:

> Numerous studies have documented the ability of airlines with dominant market shares at "fortress hubs" to discourage and defeat new entry by the use of exclusionary marketing and pricing policies. Northwest has pursued exclusionary pricing and marketing strategies that are unremunerative for Northwest but for their effect of defeating and deterring new entry. Northwest has communicated to new entrants, by public statements and by its conduct, that Northwest will pursue vigorously its announced strategy with respect to new entrants at MSP. This strategy has succeeded in deterring and defeating new entry by raising the nonrecoverable costs of entry.

Complaint at ¶ 42.

Plaintiffs allege harm to competition, injury and damages:

> The merger substantially lessened competition in the Relevant Markets. Actual and potential competition between Northwest and Republic, the two strongest and most significant competitors in the Relevant Markets, was eliminated by the Merger. Absent the Merger, Northwest and Republic would have continued to compete vigorously for passengers in the Relevant Markets, and this competition would have led to lower prices and higher quality service than has been the case since the Merger. Absent the Merger, barriers to entry at MSP would have been much lower, and new entrants would have exerted additional competitive pressure on Northwest and Republic, resulting in lower prices and better service in the Relevant Markets.

Complaint at ¶ 43. Plaintiffs claim that the market power acquired by Northwest resulted "both immediately and over the entire post-Merger period, in a substantial lessening of competition and substantially higher fares and reductions in output." Complaint at ¶ 3.

### DISCUSSION

■ Defendant moves to dismiss plaintiffs' complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court must determine, as a threshold issue in every federal case, whether it has subject matter jurisdiction over an action. "Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide." *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir.1990) (citation omitted). If the court is without jurisdiction, it must dismiss the action under Rule 12(b)(1). A motion to dismiss for failure to state a claim tests the sufficiency of the complaint. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). When analyzing a motion to dismiss, the court looks to the complaint as pleaded. The complaint must be liberally construed and viewed in the light most favorable to the plaintiff. The court will dismiss a complaint only when it appears the plaintiff cannot prove any set of facts that support the

claim. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Defendant asserts that the court lacks jurisdiction over plaintiffs' claim because section 7 of the Clayton Act expressly removes from its reach all mergers and acquisitions approved by the DOT pursuant to its antitrust enforcement authority. Defendant claims that because DOT explicitly approved the Republic merger on section 7 grounds, the statute cannot form the independent basis for a separate judicial challenge. In addition, defendant argues that the Federal Aviation Act, as amended by the Airline Deregulation Act of 1978 ("ADA"), vested exclusive jurisdiction over airline mergers and acquisitions in the DOT. Thus, even if a claim under section 7 of the Clayton Act remained applicable to the Republic merger, the court would lack jurisdiction over plaintiffs' claim. Defendant also asserts that cases previously decided in this district are dispositive of plaintiffs' claim and prohibit a collateral attack. In addition, defendant argues that even if the action were properly before the court, the plaintiffs' claim is stale under the applicable statute of limitations.

## A. Jurisdiction

 Section 7 of the Clayton Act provides that:

No person engaged in commerce or in any activity affecting commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no person subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another person engaged also in commerce or in any activity affecting commerce, where in any line of commerce or in any activity affecting commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly.

No person shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no person subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of one or more persons engaged in commerce or in any activity affecting commerce, where in any line of commerce or in any activity affect-

ing commerce in any section of the country, the effect of such acquisition, of such stocks or assets, or of the use of such stock by the voting or granting of proxies or otherwise, may be substantially to lessen competition, or to tend to create a monopoly....

15 U.S.C. § 18. Defendant relies on the last paragraph of section 7 to support its argument for dismissal:

Nothing contained in this section shall apply to transactions duly consummated pursuant to authority given by the Secretary of Transportation ... under any statutory provision vesting such power in ... [the] Secretary.

*Id.* Northwest argues that under the plain language of the statute, section 7 does not apply to the Northwest–Republic transaction because the Secretary of Transportation was authorized to approve or disapprove the transaction on antitrust grounds and, upon that authority, duly consummated the transaction. Defendant refers to section 11 of the Clayton Act as vesting such power in the Secretary:

Authority to enforce compliance with ... [section 7 of the Clayton Act] is vested ... in the Secretary of Transportation where applicable to air carriers and foreign air carriers subject to the Federal Aviation Act of 1958.

15 U.S.C. § 21(a).

Northwest also refers to section 408 of the Federal Aviation Act, as amended by the ADA, which required the DOT to determine if a proposed merger may "substantially lessen competition, or tend to create a monopoly" in "any region of the United States." Federal Aviation Act of 1958, Pub.L. No. 85–726, § 408, 72 Stat. 731 (1958) (codified at 49 U.S.C. § 1378).

In this case, the DOT recognized in its order approving the acquisition that "the competitive test under section 408 is 'modeled after Section 7 of the Clayton Act and Congress intended that it would be interpreted much as the Clayton Act is construed by the federal courts.'" *NWA–Republic Acquisition Case*, Order 86–7–81 at 5 n. 8 (July 31, 1986). After considering the competitive is-

sues and the recommendation of the administrative law judge, the DOT approved the merger.

In essence, defendant argues that the statutory language of "nothing contained in this section shall apply" provides an exemption from section 7 challenge for transactions duly approved by the Secretary of Transportation under any statutory provision vesting the Secretary with the power to approve or disapprove mergers on antitrust grounds.

Plaintiffs argue that the statutory language is not applicable to this case because section 7 does not provide an independent basis for antitrust immunity. Rather, plaintiffs argue, in order for an action to be precluded under section 7, the Secretary must act pursuant to an underlying statutory provision in which the Secretary is vested with the power to approve the transaction and thereby immunized the transaction from the antitrust laws. Plaintiffs do not dispute that section 11 of the Clayton Act vests the DOT with authority to enforce compliance with the Clayton Act or that section 408 vests authority with the DOT to approve stock acquisitions. However, plaintiffs challenge that the DOT does not have exclusive jurisdiction to address post-merger conduct. Plaintiffs argue that the U.S. Supreme Court decisions interpreting the statute's language support its position. *See Federal Maritime Comm'n v. Seatrain Lines, Inc.,* 411 U.S. 726, 93 S.Ct. 1773, 36 L.Ed.2d 620 (1973), *California v. Federal Power Comm'n,* 369 U.S. 482, 82 S.Ct. 901, 8 L.Ed.2d 54 (1962), and *Maryland and Va. Milk Producers Ass'n v. United States,* 362 U.S. 458, 80 S.Ct. 847, 4 L.Ed.2d 880 (1960). The court agrees.

■ Exemptions from the antitrust laws are narrowly construed. *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 126, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982). In *Maryland and Va. Milk Producers Ass'n v. United States,* 362 U.S. 458, 80 S.Ct. 847, 4 L.Ed.2d 880 (1960), the United States brought a civil antitrust action against an agricultural cooperative, alleging in part that the cooperative bought all of the assets of the largest competitive milk dealer in the area, "the effect of which acquisition might be substantially to lessen competition or to tend to create a monopoly in violation of section 7 of the Clayton Act." *Id.* 362 U.S. at 460–61.

After a trial, the district court found for the United States on the section 7 claim and ordered the Association to divest itself of all assets from the acquisition. The case was appealed directly to the Supreme Court. In analyzing the district court's judgment on the section 7 claim, the Supreme Court determined that the evidence "amply supported" the United States' claim. *Id.* at 469. The Association argued, however, that the acquisition was protected by the last paragraph of section 7 because "its purchase of Embassy Dairy was 'consummated pursuant to authority given by ... the Secretary of Agriculture.'" *Id.* The Court disagreed with the Association's argument:

> The trouble with this contention is that there is no 'statutory provision' that vests power in the Secretary of Agriculture to approve a transaction and thereby exempt a cooperative from the anti-trust laws under the circumstances of this case. While there is a 'statutory provision' vesting power in the Secretary of Agriculture to enter into agricultural marketing agreements which 'shall be deemed to be lawful' and 'not ... be in violation of any of the antitrust laws of the United States,' no such marketing agreement is involved here.

*Id.* (citing Agricultural Adjustment Act, § 8b, as amended, 7 U.S.C. § 608b). Thus, for the last paragraph of section 7 to apply, the Supreme Court looked for a statutory provision which vested power in the Secretary of Agriculture to approve the transaction and, with the approval, immunize the transaction from antitrust challenges.

In *California v. Federal Power Comm'n,* 369 U.S. 482, 82 S.Ct. 901, 8 L.Ed.2d 54 (1962), the El Paso Natural Gas Company first acquired the stock of the Pacific Northwest Pipeline Corporation and then applied to the Federal Power Commission ("FPC") for authority to acquire the assets pursuant to section 7 of the Natural Gas Act, 52 Stat. 825, 15 U.S.C. § 717f(c). Prior to the application with the FPC, the United States filed an action alleging that El Paso's acquisition of the stock of Pacific Northwest violated section 7 of the Clayton Act. Notwithstanding the pending antitrust suit, the FPC conducted hearings and authorized the merger.

The merger was consummated soon thereafter. The Supreme Court discussed whether antitrust immunity applied to the merger and recognized that immunity from the antitrust laws is not lightly implied. The Court looked to the Natural Gas Act, and determined that although antitrust considerations were relevant to the FPC's findings and authorization of the merger, there was no " 'pervasive regulatory scheme' ... including the antitrust laws that ha[d] been entrusted to the Commission." The Court distinguished the Natural Gas Act from the Interstate Commerce Act, in which approval of mergers of motor carriers had the effect of relieving participants in the Commission-approved merger from operation of the antitrust laws. *Id.* 369 U.S. at 485 (citing 49 U.S.C.A. § 5(11)). The Supreme Court recognized that there was no "comparable provision" under the Natural Gas Act. *Id.* at 486. In addressing the language of section 7, the Court discerned that the statute was "plainly not a grant of power to adjudicate antitrust issues" and that the statute did not grant any authority or powers which the agency did not already possess. *Id.* (citing S.Rep. No. 1775, 81st Cong., 2d Sess., p. 7). Thus, the FPC's approval did not have the effect of exempting the merger from judicial antitrust scrutiny, notwithstanding the exclusionary language of section 7.

In *Federal Maritime Comm'n v. Seatrain Lines, Inc.,* 411 U.S. 726, 93 S.Ct. 1773, 36 L.Ed.2d 620 (1973), the Supreme Court rejected the Federal Maritime Commission's argument that the last paragraph of section 7 conferred jurisdiction upon it and stated:

As it is clear from the face of the statute, the Act confers no new jurisdiction on any of the listed agencies, but merely provides that mergers already exempt from Clayton Act coverage were to be unaffected by changes in the Act. As this Court held in *California v. FPC,* the amended § 7 was "plainly not a grant of power to adjudicate antitrust issues." 369 U.S. 482, 486, 82 S.Ct. 901, 8 L.Ed.2d 54 (1962). Hence, nothing about the Commission's jurisdiction can be inferred from the inclusion of its predecessor on the list. This view is confirmed by the legislative history of the 1950 amendment. Although acceding to the Commission's request that it be included in the list of agencies left unaffected by the Clayton Act, ... the Committee made explicit that "[I] n making this addition ... it is not intended that the Maritime Commission, or, for that matter, any other agency included in this category, shall be granted any authority or powers which it does not already possess." S.Rep. No. 1775, 81st Cong., 2d Sess., 7 (1950).

411 U.S. at 743–44 n. 11.

The defendant argues that the Supreme Court cases are inapposite for the circumstances of this case because the Supreme Court decisions did not involve approval of transactions by agencies which, like the DOT, possessed authority pursuant to section 11 of the Clayton Act to enforce compliance with section 7. Defendant argues that because the DOT possessed the authority to enforce section 7, it had the authority to duly consummate the transaction "on antitrust grounds." Although Northwest's perspective is compelling, the court concludes that the authority to enforce section 7 of the Clayton Act is distinguishable from the authority to exclusively adjudicate antitrust issues and, in effect, to relieve the participants to the transaction from judicial antitrust scrutiny.

The court agrees with the plaintiffs that in applying the statutory language of section 7, the court must look to the underlying statutory provision to determine whether that provision vested power in the Secretary to approve the transaction and thereby exempted Northwest from the antitrust laws. The court concludes that the exemption, or immunity, is derived from the underlying statutory provision, and not from the last paragraph of section 7.

In this case, Northwest relies on section 11 of the Clayton Act as vesting authority in the Secretary. Whereas section 11 vests the Secretary of Transportation with authority to enforce compliance with section 7 of the Clayton Act, Congress did not confer exclusive jurisdiction for enforcement with the Secretary or relieve persons from any liability under the antitrust laws. *See* 15 U.S.C. § 21(e). Thus, even though the Secretary was vested with authority to enforce compliance with section 7, the statute did not there-

by exempt the Secretary's approval from the antitrust laws.

Defendant also relies on section 408 as vesting authority in the Secretary. Although section 408 obligated the Secretary to partake in the same analysis as that required under section 7, section 408 did not provide antitrust immunity as a companion to the Secretary's approval of the acquisition.

■ Prior to 1978, the CAB's approval of an airline merger automatically conferred broad antitrust immunity on the parties to the merger for their subsequent conduct:

> Any person affected by any order made under sections 408, 409, or 412 of this Act shall be, and is hereby, relieved from the operation of the "antitrust laws", as designated in ... [section 12 of Title 15], and of all other restraints or prohibitions made by, or imposed under, authority of law, insofar as may be necessary to enable such person to do anything authorized, approved, or required by such order.

See Federal Aviation Act of 1958, Pub.L. No. 85–726, § 414, 72 Stat. 731, 770 (1958) (codified at 49 U.S.C. § 1384). In 1978, Congress enacted the Airline Deregulation Act ("ADA") of 1978, which eliminated the CAB and provided that the DOT would assume responsibility for the approval or disapproval of mergers. Congress also dispensed with the broad antitrust immunity which was automatically conferred with the approval of a merger under section 1378:

> In any order made under section 408 (49 U.S.C. § 1378], 409 [49 U.S.C. § 1379], or 412 [49 .U.S.C. § 1382]) of this Act, the Board may, as part of such order, exempt any person affected by such order from the operations of the "antitrust laws" set forth in subsection (a) of the first section of the Clayton Act (15 U.S.C. 12) to the extent necessary to enable such person to proceed with the transaction specifically approved by the Board in such order and those transactions necessarily contemplated by such order, except that the Board may not exempt such person unless it determines that such exemption is required in the public interest.

Airline Deregulation Act of 1978, Pub.L. No. 95–504, § 30(a), 92 Stat. 1705, 1731 (1978). Therefore, after 1978, the DOT was required to specify in its approval order any exemptions from the antitrust laws. Although Congress vested the Secretary with the power to approve the acquisition and to give such approval the effect of immunizing the participants from antitrust challenges, the Secretary did not exercise its power to do so with respect to the Northwest–Republic merger. Because there was no underlying statute which conferred automatic antitrust immunity, and because the Secretary did not grant antitrust immunity pursuant to its independent statutory authority, the language of section 7 does not preclude plaintiffs' action.

### B. Prior Decisions

■ Northwest argues that collateral estoppel precludes plaintiffs' antitrust action, pursuant to prior decisions in *Fischer v. Northwest Airlines, Inc.,* Civ. No. 3–87–106 (D.Minn. June 9, 1988), *aff'd on other grounds,* 883 F.2d 594 (8th Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990), and *International Travel Arrangers v. Northwest Airlines, Inc.,* 723 F.Supp. 141 (D.Minn.1989), *aff'd,* 991 F.2d 1389 (8th Cir.), *cert. denied,* 510 U.S. 932, 114 S.Ct. 345, 126 L.Ed.2d 309 (1993). In *Fischer,* the plaintiffs were stockholders in a regional air carrier with business relationships with Northwest. The plaintiffs challenged Northwest's acquisition of Republic under sections 1 and 2 of the Sherman Act. Northwest argued that plaintiffs were precluded from collaterally attacking the lawfulness of the Republic acquisition because the acquisition was subject to mandatory administrative review from which appeal could have been taken to the United States Court of Appeals for the District of Columbia. The Honorable Donald D. Alsop, then Chief Judge of this district court, dismissed plaintiff's claims stating that because "[p]laintiffs' claims challenging the lawfulness of the Republic acquisition on antitrust grounds are essentially the same issues resolved by the [DOT]," plaintiffs were "preclude[d] ... from collaterally attacking the acquisition." *Id.* at 12–13 (citing *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970) and *City of Tacoma v. Taxpayers of Tacoma,* 357 U.S. 320, 78 S.Ct. 1209, 2 L.Ed.2d 1345

(1958)). The Eighth Circuit Court of Appeals affirmed Judge Alsop's decision on other grounds. The Honorable Earl R. Larson, then Senior U.S. District Judge sitting by designation, dissented from the majority opinion.

Judge Larson analyzed the deregulation of the airline industry and compared the automatic antitrust immunity in effect prior to 1978 with the amendments to the immunity provisions by the ADA. Judge Larson stated:

> In my view, the judicial review provisions of the Federal Aviation Act should not be interpreted to preclude independent judicial action to enforce the antitrust laws where, as here, the agency has specifically declined to grant antitrust immunity to the approved transaction. The doctrine of exclusive jurisdiction is to be invoked only when a court finds that it has been totally ousted of jurisdiction because Congress, in enacting the regulatory statute, "intended to override the fundamental national policies embodied in the antitrust laws." ...
>
> Where immunity is granted, I agree that the court of appeals has exclusive jurisdiction to review the challenged action. But where immunity is neither requested by the carrier nor granted by the agency, district courts should be free to entertain antitrust challenges such as the plaintiff has presented in this case.

*Fischer v. Northwest Airlines, Inc.,* 883 F.2d 594, 607–08 (8th Cir.1989). Because the DOT did not grant immunity to Northwest, Judge Larson would have allowed the antitrust challenge to the acquisition itself to go forward.

In *International Travel Arrangers* ("ITA") *v. NWA, Inc.,* 723 F.Supp. 141 (D.Minn.1989), the plaintiff was a Minneapolis/St. Paul based wholesale tour operator alleging a violation of section 7 of the Clayton Act with respect to Northwest's acquisition of Republic. Northwest again argued, as in *Fischer,* that ITA had an opportunity to challenge the Republic acquisition in the administrative proceedings and that it was precluded from relitigating the DOT's decision in another forum. The plaintiff relied on Judge Larson's analysis of the history and purposes of antitrust immunity to argue that Judge Alsop's decision in *Fischer* was incorrect and that the plaintiff's challenge of the acquisition

should continue. The Honorable Paul M. Magnuson, now Chief Judge of this district court, thoroughly analyzed Judge Larson's dissent and disagreed with the plaintiff:

> Judge Larson's analysis of the history and purposes of § 1384 is sound, but his conclusion, that all issues decided by the DOT are open to challenge in an antitrust action, is unwarranted. Judge Alsop's approach, which protects the DOT's approval of the acquisition while allowing plaintiffs to challenge post-merger anti-competitive conduct, gives due respect for both the role of the DOT in approving mergers once and for all and the rights of injured parties to obtain redress for antitrust violations.

*ITA,* 723 F.Supp. at 147. The court dismissed plaintiff's section 7 claim challenging the merger itself:

> The court need not expose the decision of the DOT to challenge in order to fulfill the purposes of § 1384. The availability of remedies for post-merger anti-competitive activities insures that the parties involved will not be able to misbehave with impunity. On the other hand, the parties should not be subject to fear that DOT approval will be overturned and the acquisition undone. Out of respect for the administrative procedure described in the Federal Aviation Act and the exclusive review provisions set forth therein, this court must uphold the finality of the July 31, 1986 order. Therefore, ITA's second claim challenging the NWA/Republic merger itself must be dismissed.

*Id.* at 148.

In this case, Northwest argues that plaintiffs are making yet a third attempt to allege an identical challenge to the legality of the Northwest–Republic merger which, Northwest asserts, is precluded by collateral estoppel. Plaintiffs urge the court that Judge Larson's view that the doctrine of collateral estoppel is inapplicable when the DOT has not granted antitrust immunity is the better rule. The court has considered the prior court decisions and agrees with Judge Magnuson that the application of collateral estoppel to the DOT's approval of the acquisition itself still allows the purposes of § 1384 to be fulfilled in that the availabilities of remedies

for post-merger anticompetitive activities remain available.

In contemplation of this court's alignment with *ITA*, plaintiffs argue that the rationale of *ITA* expressly permits its section 7 challenges to Northwest's post-merger activities. In opposing defendant's motion, plaintiffs argue that Northwest has seriously misstated the nature of their section 7 claim:

> Northwest's arguments relating to Plaintiffs' Clayton § 7 claim rest upon one erroneous proposition, namely, that Plaintiffs' Clayton § 7 cause of action is based on the original 1986 Northwest/Republic merger transaction whereby Northwest first acquired Republic's stock. *See* Northwest Mem., pp. 1–5, 7–10, 12–13, 14–19. Implicit in this argument is that Clayton § 7 only provides a cause of action to attack the initial stock/asset acquisition transaction. *See id.* Clayton § 7, however, not only prohibits initial anticompetitive merger transactions, but it also provides a cause of action for the damage caused by the merged enterprise's subsequent holding of the stock or assets when the effect of such holding substantially lessens competition or tends to create a monopoly.

Plaintiffs' Memorandum in Opposition to Motion at 8. Plaintiffs characterize its analysis as the "duality" or "dual nature of section 7 of the Clayton Act." *Id.* Plaintiffs contend that in *ITA*, the section 7 claim which was dismissed was a challenge to the acquisition itself, but that other antitrust claims challenging post-merger conduct were permitted to go forward. In this case, plaintiffs assert that they are not challenging the 1986 merger transaction whereby Northwest acquired Republic's stock, the first part to the duality; rather, they are challenging Northwest's post-merger holding of Republic's stock which, they allege, has substantially lessened competition and tended to create a monopoly in the four years preceding the filing of the Complaint. Thus, the plaintiffs argue, the elements of collateral estoppel are inapplicable to its claim.

To support their duality notion, plaintiffs rely on Supreme Court decisions in *United States v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057 (1957), and *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 240, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975).

Northwest argues that plaintiffs' argument that its continued "holding" of the stock of Republic subjects the merger to further challenge is a contrivance since Northwest acquired 100 percent of the stock of Republic and completely merged the company into its operations. Northwest asserts that the stock was turned in and extinguished and that there is nothing for it to "hold." *See* Minn. Stat. § 302A.641 (stating that when a merger becomes effective, the separate existence of all constituent corporations except the surviving corporation ceases to exist).

In addition, Northwest argues that plaintiffs' reliance on *United States v. E.I. du Pont de Nemours & Co.*, 353 U.S. 586, 77 S.Ct. 872, 1 L.Ed.2d 1057 (1957), is misplaced. In du *Pont,* the government brought a section 7 claim against Du Pont resulting from Du Pont's purchase of a 23 percent stock interest in General Motors Corporation. The stock purchase occurred approximately thirty years before the suit. Du Pont asserted that the government could not maintain the action because section 7 was only applicable to the acquisition of stock and not to the holding or subsequent use of stock. The Supreme Court allowed the government to maintain the action:

> We hold that any acquisition by one corporation of all or any part of the stock of another corporation, competitor or not, is within the reach of the section whenever the reasonable likelihood appears that the acquisition will result in a restraint of commerce or in the creation of a monopoly of any line of commerce....

> We repeat, that the test of a violation of § 7 is whether, at the time of suit, there is a reasonable probability that the acquisition is likely to result in the condemned restraints.... The fire that was kindled in 1917 continues to smolder....

du *Pont,* 353 U.S. at 592, 607. Northwest argues that the government's suit in du *Pont* was based on an array of post-acquisition evidence of alleged misdeeds by Du Pont in which it *used* and leveraged its minority stock interest to achieve anticompetitive ends. *See id.* at 607 (reviewing post-acquisition evidence and observing that "du Pont

purposely employed its stock to pry open the General Motors market to entrench itself as the primary supplier of General Motors' requirements for automotive finishes and fabrics"). Northwest argues that the "use" and not the mere "holding" of stock provided the basis for the government's challenge.

With respect to *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 240, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975), plaintiffs similarly argue that the Supreme Court's decision supports the duality concept. In that decision, the Supreme Court analyzed the terms of a Federal Trade Commission consent order and construed the terms by assuming that the parties used the words with the specialized meaning they have in the antitrust field. The Court looked to the Clayton Act to interpret the word "acquiring." *See Continental Baking*, 420 U.S. at 240–41. The Court relied on its prior decision in *du Pont* and determined that under the consent order, "acquiring" must mean "both the act of first obtaining assets and the retention and use of those assets." *Id.* at 243.

Plaintiffs also rely on *SCFC ILC, Inc. v. Visa U.S.A., Inc.*, 801 F.Supp. 517 (D.Utah 1992), to support its section 7 claim. In that case, Sears, the owner of the Discover card, competed for business with Visa. Sears applied for a Visa membership, at least in part, to "learn everything that was going on with its competitor, Visa." *SCFC ILC*, 801 F.Supp. at 519. Visa denied the application and passed a Bylaw which would prevent Sears, or any other direct competitor of Visa from becoming a Visa member.

> [Sears later tried] to gain entry into Visa by purchasing from the Resolution Trust Corporation the assets of MountainWest Savings and Loan, an insolvent Savings and Loan ... that had a relatively small Visa membership of approximately 6,000 cardholders. Sears was aware of Visa's desire not to allow Sears as a member.

Sears' acquisition of MountainWest was not communicated directly to Visa. However, Visa eventually discovered MountainWest's affiliation with Sears ... and refused to authorize the printing of ... 1.5 million MountainWest Visa credit cards. *Id.* at 520. Visa alleged a section 7 claim against Sears based on post-acquisition conduct. Although Visa argued that section 7 only allows suits which challenge the initial acquisition of stock, the court relied on *du Pont* and *Continental Baking* and determined that section 7 provided for a separate cause of action based on post-acquisition conduct, notwithstanding that the Federal Deposit Insurance Corporation's approval of the merger under the Bank Merger Acts immunized the acquisition itself from section 7. The court concluded that:

> Visa's counterclaim challenges more than Sears' initial acquisition. It also challenges Sears' continued ownership of MountainWest. It attacks the way Sears had used (and intends to use) MountainWest as a means of participating in the Visa credit card program. This "holding" and "use" of MountainWest, it is alleged, constitutes a violation of Section Seven.
>
> The Bank Merger Act does not prohibit Visa's counterclaim. The counterclaim does not challenge the merger transaction alone and of itself, and is therefore not barred by the Act. . . .

*Id.* at 525.

▮ The court agrees with plaintiffs that section 7 of the Clayton Act and cases interpreting the statute support the proposition that section 7 provides for a claim based on post-acquisition conduct, in addition to a claim challenging the initial acquisition of stock. However, the plaintiffs have not cited any cases, nor has the court discovered any cases, in which a mere "holding" of acquired stock or assets has been sufficient to provide for a section 7 claim independent of a challenge to the initial acquisition.[3] The court

---

3. Plaintiffs urge that the Eighth Circuit Court of Appeals in *Carlson Companies, Inc. v. Sperry and Hutchinson Co.*, 507 F.2d 959, 962 (8th Cir.1974) recognized the duality of section 7:

> [I]t is readily apparent that damage can easily result form completed illegal acquisitions once the monopoly takes hold .... While the primary thrust of § 7 is to prohibit and thus to forestall anti-competitive and monopolistic ac-

quisitions, there appears to be no rational basis for holding that a completed acquisition violative of § 7 that leads to specific damages cannot be a basis for an action under § 4 of the Clayton Act. As a practical matter it often may be difficult to foresee and evaluate the real impact and effect of an acquisition until the transaction has been completed and the aggregate combine is operating. Although this may

concludes that there must be a holding *and* anticompetitive use of the stock to maintain a challenge for post-acquisition conduct. *See du Pont,* 353 U.S. at 607; *SCFC ILC,* 801 F.Supp. at 525; *see also International Railways of Central America v. United Brands Co.,* 532 F.2d 231 (2d Cir.1976) (recognizing a use of stock to impose section 7 damage liability), *cert. denied,* 429 U.S. 835, 97 S.Ct. 101, 50 L.Ed.2d 100 (1976) *SCM Corp. v. Xerox Corp.,* 463 F.Supp. 983 (D.Conn.1978) (analyzing "holding" theory and determining that an impermissible use must be involved), *affirmed and remanded on other grounds,* 645 F.2d 1195 (2d Cir.1981), *cert. denied,* 455 U.S. 1016, 102 S.Ct. 1708, 72 L.Ed.2d 132 (1982). In d*u Pont,* the party held and used its minority stock interest in such a way as to likely have the effects prohibited by the statute. Similarly, in *SCFC ILC,* Sears used its acquisition of MountainWest following the initial acquisition for alleged anticompetitive means. In this case, plaintiffs have not alleged a use, nor does the court conceive of a post-acquisition use when Republic ceased to exist effective of the merger and all Republic stock was turned in and extinguished.

With respect to Northwest's collateral estoppel argument, the court concludes that to the extent plaintiffs challenge the legality of the merger itself, such claim is precluded pursuant to *Fischer* and *ITA.* In addition, the court concludes that section 7 does not support a claim for the mere holding of stock without its use in some anticompetitive manner. In this case, plaintiffs have only alleged a section 7 claim. Thus, plaintiffs have failed to state a claim for which relief may be granted. The court concludes that dismissal of plaintiffs' action is appropriate.[4]

### CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that defendants' motion to dismiss is granted (Doc. Nos. 6, 12, and 15). Plaintiffs' action is dismissed with prejudice.

provide a double basis for liability in a factual situation that also is violative of § 1 and § 2 of the Sherman Act, the action is not precluded by statutory exception, statutory language, nor the legislative history of the Clayton Act.

The court agrees with Northwest that the Eighth Circuit was addressing the narrow question of whether a private right of action was available under sections 4 and 16 of the Clayton Act for alleged section 7 violations. The case does not lend support to plaintiffs' "duality" argument.

4. The court need not discuss the merits of defendant's other grounds for dismissal.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**