# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1487

_____

| | |
|---|---|
| Midwestern Machinery, Inc.; | * |
| Brian F. Gagan; Sharon Tolbert Glover; | * |
| Charles M. Koosman; Laurie I. Laner; | * |
| Jack Reuler; Michael W. McNabb; | * |
| Nigel Linden, | * |
| | * |
| Appellants. | * |
| | * |
| v. | * |
| | * |
| Northwest Airlines, Inc., | * Appeal from the United States |
| | * District Court for the District |
| Appellee. | * of Minnesota. |
| _____ | * |
| | * |
| State of Delaware; State of Hawaii; | * |
| State of Iowa; State of Michigan; | * |
| State of New York; State of North | * |
| Dakota; State of Ohio; State of South | * |
| Dakota; State of Utah; State of West | * |
| Virginia; State of Wisconsin, | * |
| | * |
| Amici on behalf of Appellants. | * |

_____

Submitted: October 19, 1998

Filed: February 2, 1999

_____

Before McMILLIAN, FAGG, and BEAM, Circuit Judges.

_____

BEAM, Circuit Judge.

Midwestern Machinery, Inc., Brian F. Gagan, Sharon Tolbert Glover, Charles M. Koosman, Laurie I. Laner, Jack Reuler, Michael W. McNabb, and Nigel Linden appeal the dismissal of their complaint alleging a violation of section 7 of the Clayton Act. The district court dismissed their complaint under Federal Rule of Civil Procedure 12(b)(6) because it found that a claim under section 7 of the Clayton Act, which prohibits acquisitions of stock or assets that substantially lessen competition, expires when one corporation merges with another and its stock is turned in and extinguished. We disagree and reverse.

## I.      BACKGROUND

In January 1986, Northwest Airlines (Northwest) reached an agreement with Republic Airlines (Republic) whereby the two airlines would merge. At the time of merger, Northwest and Republic were respectively the nation's eighth and ninth largest airlines and the two largest operators at the Minneapolis-St. Paul International Airport. The merger was approved by the Department of Transportation, the reviewing agency at the time, but no antitrust immunity was granted for the transaction. After the merger was completed in August 1986, all of Republic's stock was turned in and extinguished, and Republic ceased to exist as a separate entity.

The plaintiffs, Midwestern Machinery, Inc., Brian F. Gagan, Sharon Tolbert Glover, Charles M. Koosman, Laurie I. Laner, Jack Reuler, Michael W. McNabb, Nigel Linden (hereinafter Midwestern), all frequent travelers on Northwest since the merger, brought this action in June 1997, alleging a violation of section 7 of the Clayton Act (hereinafter section 7). 15 U.S.C. § 18. Midwestern's complaint alleges

that the merger resulted in Northwest holding and using Republic's stock and assets[1] in violation of the section 7 prohibition against acquisitions which substantially lessen competition. Midwestern alleges that Northwest's disproportionate increases in fares, market dominance, and use of entry barriers for new competitors illustrate the substantial lessening of competition following the merger.

Northwest moved to dismiss Midwestern's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The district court found that, although a post-acquisition claim can exist for holding and using stock and assets in violation of section 7, a completed merger precludes such a claim.

In order to make out a section 7 claim for post-acquisition holding and use, Midwestern must allege an anti-competitive use of Republic's stock or assets. The district court dismissed Midwestern's complaint because it could not "conceive of a post-acquisition use when Republic ceased to exist effective of the merger and all Republic stock was turned in and extinguished." Midwestern Machinery Co. v. Northwest Airlines, Inc., 990 F. Supp. 1128, 1138 (D. Minn. 1998).

## II.    DISCUSSION

We review the district court's 12(b)(6) dismissal de novo. See Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998). When ruling on a motion to dismiss, courts are required to accept the complaint's factual allegations as true and to construe them in the light most favorable to the plaintiff. In essence, this

---

[1]Midwestern challenges the post-acquisition holding and use of Republic's stock and assets. Two previous actions were brought to challenge the acquisition of Republic. Northwest argues that the previous challenges, International Travel Arrangers v. NWA, Inc., 991 F.2d 1389 (8th Cir. 1993) and Fischer v. NWA, Inc., 883 F.2d 594 (8th Cir. 1989), preclude this action. The district court correctly rejected this argument.

mandates that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would demonstrate an entitlement to relief." Id. As indicated, Midwestern alleges a substantial lessening of competition shown by Northwest's disproportionate increases in fares, market dominance, and use of entry barriers for new competitors following the merger. Accepting these factual allegations as true, we are left with the issue of whether a completed merger, where all the stock of one corporation is turned in and extinguished, can violate section 7.

Northwest argues, consistent with the district court opinion, that when the two airlines became fully merged, no section 7 claim is possible since all of Republic's stock is turned in and extinguished. In essence, Northwest argues that no Republic stock or assets are left to substantially lessen competition. We hold that a section 7 cause of action can exist even though a merger occurs and two corporations effectively become one. We reach this conclusion because: (1) the language of section 7 expressly covers acquisitions of all the stock and assets of a corporation; and (2) section 7 has been interpreted to extend a cause of action beyond the completion of an acquisition or merger.

### A.    Acquisitions of All or Part

The starting point for interpreting a statute is always the language of the statute itself. See Norwest Bank v. Doth, 159 F.3d 328, 333 (8th Cir. 1998). We are guided by the plain language of section 7 of the Clayton Act which prohibits acquisitions of the "*whole or any part* of the stock" or assets of a company, where the effect may be to substantially lessen competition or tend to create a monopoly. 15 U.S.C. § 18 (emphasis added).[2] The language of section 7 expressly provides for a claim even

---

[2]The relevant portions of section 7 of the Clayton Act provide:

No person engaged in commerce or in any activity affecting commerce

when all ("whole") of the stock or assets are acquired.  The existence of a section 7 claim does not rise or fall with the percentage of the corporation acquired—whether it be a merger of all or acquisition of only part.  Compare United States v. Von's Grocery Co., 384 U.S. 270, 278 (1966) (finding a violation of section 7 where competing grocery store chains completely merged) with United States v. E.I. Du Pont De Nemours & Co., 353 U.S. 586, 588 (1957) (finding a violation of section 7 where one company acquired only part of another company's stock).  Thus, although the merger of Republic and Northwest resulted in the acquisition of all of Republic's stock and assets, it did not cut-off a section 7 claim.

As noted, after the merger was completed, Republic's stock was turned in and extinguished.  Northwest views this action as significant for purposes of section 7.  If extinguishing stock eliminated section 7 claims, corporations could seek to use this

---

shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no person subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another person engaged also in commerce or in any activity affecting commerce, where in any line of commerce or in any activity affecting commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly.

No person shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no person subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of one or more persons engaged in commerce or in any activity affecting commerce, where in any line of commerce or in any activity affecting commerce in any section of the country, the effect of such acquisition, of such stocks or assets, or of the use of such stock by the voting or granting of proxies or otherwise, may be substantially to lessen competition, or to tend to create a monopoly.

15 U.S.C. § 18.

approach as an antitrust shelter and the speed at which it is accomplished would control the existence of a claim. The plain language of section 7 does not support such a result. The district court's concern that it could not "conceive" of how Republic's stock or assets could be used to substantially lessen competition and thereby violate section 7 centers around the fact that the two corporate entities are no longer distinct, and therefore the use of Republic's stock or assets is unclear and difficult to trace. However, this is a matter for discovery, proof, summary judgment or trial and not a matter for decision on a motion to dismiss.[3] Midwestern's complaint should not be dismissed simply because Northwest acquired all of the assets of Republic and then Republic's stock was turned in and extinguished.

## B.     Completed Acquisitions

Northwest further argues that completion of a merger forecloses section 7 claims for post-acquisition activities. However, Midwestern contends that even though the merger was completed in 1986, subsequent holding and use can violate section 7. Section 7 is primarily aimed at arresting, at their incipiency, acquisitions and mergers that substantially lessen competition or tend to create a monopoly. See Du Pont, 353 U.S. at 589. For this purpose, the language of section 7 is structured such that a violation can occur when there is a *threat or possibility* of substantially lessening competition or creating a monopoly. See id. at 607. No restraints, monopolies, or substantial lessening of competition need actually occur to violate section 7. Cf. Carlson Co. v. Sperry and Hutchinson Co., 507 F.2d 959, 961-62 (8th Cir. 1974) (finding section 7 primarily aimed at arresting the possibility or threat). However, the primary purpose of section 7 does not preclude a claim once the merger or acquisition

---

[3]This might seem to open up a merger or acquisition to continual challenge under section 7. However, there are limits such as the statute of limitations, the doctrines of laches and problems of proof and causation.

is complete.[4]  Midwestern's section 7 claim is not lost because the Northwest-Republic merger is complete.

The underlying rationale for extending section 7 liability beyond completion of the acquisition or merger is that "as a practical matter it often may be difficult to foresee and evaluate the real impact and effect of an acquisition until the transaction has been completed and the aggregate combine is operating."  Id. at 962.  Therefore, "while the primary thrust of § 7 is to prohibit and thus to forestall anti-competitive and monopolistic acquisitions," id., completed acquisitions and "post-acquisition conduct may amount to a violation of § 7."  Federal Trade Comm'n v. Consolidated Foods Corp., 380 U.S. 592, 598 (1965).  An "acquisition," for purposes of section 7, extends, and therefore can be challenged, until the deal is undone.  See United States v. ITT Continental Baking Co., 420 U.S. 223, 242 (1975).

The Supreme Court's decision in Du Pont aptly illustrates the vitality of a section 7 claim after acquisition is completed.  See Du Pont, 353 U.S. 586.  In Du Pont, a section 7 violation was established even though it was not manifest at the time of initial acquisition and over thirty years had passed since the actual acquisition of stock.  The Supreme Court analogized section 7 to a fire which, although smoldering, may blaze into anti-competitive activity at any time and thereby give rise to a claim.  See id. at 607.  Under Du Pont, a Clayton Act violation may occur "at or any time after the acquisition, depending upon the circumstances of the particular case."  Id. at 597; see ITT, 420 U.S. at 242 (finding that a cause of action arises even if at the time of the

---

[4]Northwest argues that a post-acquisition claim is properly brought pursuant to other antitrust sections such as the Sherman Act.  In Carlson we found that although a private action for damages under section 7 "may provide a double basis for liability in a factual situation that also is violative of § 1 and § 2 of the Sherman Act, the action is not precluded by statutory exception, statutory language, nor the legislative history of the Clayton Act."  Carlson, 507 F.2d at 962.

initial acquisition there was no realistic threat or restraint of commerce or creation of a monopoly).

Case law is clear that "holding as well as obtaining assets" is potentially violative of section 7.[5] ITT, 420 U.S. at 240. It is an artificial limitation to eliminate the possibility of a section 7 claim because a merger is completed and all the stock of the merging company is turned in and extinguished. The continuing "fire" of potential illegal activity described in Du Pont cannot so easily be extinguished. The district court erred by dismissing the complaint for failure to state a claim.

## III.   CONCLUSION

For the foregoing reasons, we reverse and remand to the district court for further proceedings.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[5]The district court found that merely holding stock does not violate section 7. It concluded that there must also be some anti-competitive use. There is no requirement that one intend to restrain competition, but only that the acquisition of stock or assets threatens or actually lessens competition. See Du Pont, 353 U.S. at 607.